[Civ. No. 2629.   Third Appellate District.—June 8, 1923.]

## WILLIAM PIERCE, Appellant, v. COUNTY OF SOLANO et al., Respondents.

[1] STATUTORY CONSTRUCTION — MEANING OF WORDS "REVISE" AND "AMEND."—While abstractedly there are well-understood differences in meaning between the words "revise" and 'amend," they are interchangeable in the sense in which they are used in article IV, section 24, of the constitution, which provides that "No law shall be revised or amended by reference to its title; but in such case the act revised or section amended shall be re-enacted and published at length as revised or amended."

[2] ID.—REVISION OR AMENDMENT OF ACT.—There is no shade of difference in the meaning, under the rules governing the construction of statutes, between the "revision" of a particular act, or a section thereof, "to read as follows" and the "amendment" of the same act or section "to read as follows." In either case it is clear that the revising or amending act is intended as a substitute for the original statute or section, continuing in force that which is re-enacted and repealing what is omitted.

[3] STREET LAW—ROAD DISTRICT IMPROVEMENT ACT—SUFFICIENCY OF DESIGNATION.—The act of 1921 (Stats. 1921, p. 311) is "amendatory" of the Road District Improvement Act of 1907 (Stats. 1907, p. 806), and the statement in a resolution of intention that the supervisors are "proceeding under and by virtue of the Road District Improvement Act approved March 21, 1907, and acts

62 Cal. App.—30

amendatory thereof," is not inappropriate or .misleading, notwith-
standing the act of 1921 expressly provides that it shall be known
and designated as the "Road District Improvement Act of 1907."

[4] ID. — ESTABLISHMENT OF BOUNDARIES — ORDERING OF WORK — DE-
TERMINATION OF SUPERVISORS—HEARING—FAILURE TO OBJECT.—The
courts cannot interfere with the determination of the board of
supervisors in the establishment of the boundaries of a road dis-
trict and the ordering of work to be done therein where the com-
plaining property owner was given a reasonable opportunity to be
heard in the proceeding before the board and there failed to
object to any action taken by it.

APPEAL from a judgment of the Superior Court of Solano County. R. H. Latimer, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Hadsell, Sweet & Ingalls for Appellant.

W. U. Goodman, Brantley W. Dobbins and Arthur Lindauer for Respondents.

FINCH, P. J.—In this action the plaintiff prayed that the organization of a certain road improvement district be adjudged void and the defendants enjoined from further proceedings in connection therewith. Defendants were given judgment, and plaintiff has appealed.

The proceedings sought to be annulled were had under the "Road District Improvement Act of 1907." On the third day of January, 1922, the board of supervisors adopted a resolution of intention to order certain road work to be done, containing the following provisions material to this discussion: "Resolved, that it is the intention of the board of supervisors, . . . proceeding under and by virtue of the Road District Improvement Act approved March 21st, 1907, and acts amendatory thereof . . . to order work to be done as follows: . . . Notice is hereby given that at the time specified hereinbefore for ordering the work . . . all objections which are, under the provisions of said Road District Improvement Act of 1907, and acts amendatory thereof, entitled to be heard or determined, will then be heard and determined." The later resolution ordering the work to be done provides: "All of the herein proposed work shall be done in pursuance of an act of the Legislature of the

State of California, entitled [here follows the original title of the act] approved March 21, 1907, and the several acts amendatory thereof." Appellant contends that the supervisors followed the original act of 1907 (Stats. 1907, p. 806) and amendments thereof, and "not the revised 'Road District Improvement Act of 1907,' as revised by the legislature in 1921," and that, therefore, their proceedings are void.

Section 14 of the act of 1907 was amended in 1911 (Stats. 1911, p. 506); sections 2, 6, 8, 11, 12, and 13 in 1915 (Stats. 1915, p. 1394); sections 1, 3, 4, 7, 14, and 15 in 1917 (Stats. 1917, p. 1369); and sections 9 and 12 in 1919 (Stats. 1919, pp. 516, 558). A new section, numbered 15½, was added in 1919 (Stats. 1919, p. 1336). In 1921 the legislature passed an act entitled "An act to amend the title of and to revise an act entitled [giving the title of the act of 1907], approved March 21, 1907, as amended, and to include therein provision for the doing of work adjacent to said public roads, streets, avenues, boulevards, lanes and alleys which is incidental to the work thereon." (Stats. 1921, p. 311.) The main provisions of the act of 1907 and its amendments were carried forward into the revised act, many of them literally. Section 1 provides that the title of the act of 1907, "as amended, is hereby amended to read as follows," setting out the title as amended. Section 2 reads: "Said act is hereby revised to read as follows," followed by the body of the statute, divided into thirty-three sections. Then follows section 3 of the act, providing that proceedings commenced before the act went into effect should be governed by the law in force at the time of the passage of the resolution of intention therein, with certain exceptions. Section 33 of the revised act provides: "This act shall be known as the 'road district improvement act of 1907' and by such designation shall be sufficiently identified in any proceeding thereunder, and whenever in the resolution of intention it shall be set forth or recited that the proceeding is under the 'road district improvement act of 1907,' this act shall be construed as the paramount statute for such proceeding, independently of, and alternatively for, other statutes for the improvement of public ways not within incorporated cities and towns." Section 4 provides that the resolution of intention "may, in form, and shall, in substance, be [filling all blanks], as indicated fol-

lowing, to wit: . . . Resolved, That it is the intention of
the board of supervisors of the county of ——, proceeding
under and by virtue of the road district improvement act
of 1907, . . . to order work to be done as follows: . . .
Notice is hereby given that at the time specified , . . all ob-
jections which are, under the provisions of said road district
improvement act of 1907, entitled to be heard or determined,
will then be heard and determined." Section 9 provides
that "the board of supervisors may order the work to be
done and if it so do shall fix a time for receiving bids for
doing the work and direct the clerk to give notice ac-
cordingly, inviting sealed bids. Such notice shall include
a statement that the work is to be done 'under the provisions
of the road district improvement act of 1907.' " It thus
appears that the proceedings of the board of supervisors
were in literal conformity with the provisions of the act of
1921, except that the terms "Road District Improvement
Act approved March 21st, 1907, and acts amendatory
thereof" were employed instead of "Road District Improve-
ment Act of 1907."

"No law shall be revised or amended by reference to its
title; but in such case the act revised or section amended
shall be re-enacted and published at length as revised or
amended." (Const., art. IV, sec. 24.) Counsel for appellant
quote the foregoing constitutional provision and say: "A
revised act is a new and original piece of legislation." In
Lewis' Sutherland on Statutory Construction, second edi-
tion, section 269, it is said: "Revision of statutes implies a
re-examination of them. The word is applied to a restate-
ment of the law in a connected or improved form. The
restatement may be with or without material change. A
revision is intended to take the place of the law as previously
formulated. By adopting it the legislature say the same
thing, in effect, as when a particular section is amended by
the words "so as to read as follows." In section 273 it is
said: "Where an act is amended or revised, and the former
act expressly or by implication repealed, such provisions of
the old law as are substantially re-enacted are deemed to
be continuous." The inheritance tax law of 1905 (Stats.
1905, p. 341) was complete in itself and it expressly re-
pealed the act of 1893 (Stats. 1893, p. 193), and all amend-
ments thereto. In *Estate of Martin,* 153 Cal. 225, 228 [94

Pac. 1053, 1055], it is said: "The act of 1905 containing the repealing clause above mentioned is practically a revision of the act of 1893 and its amendments, providing for succession taxes. Certain changes are made in the new law. . . . These changes are found, for the most part, in sections 1, 2, 3 and 4 of the new law. . . . The other portions of the old law are substantially re-enacted in the act of 1905 with a few alterations and additions which do not affect the question. . . . These re-enactments come within the scope and effect of section 325 of the Political Code, declaring that, when a part of a statute is amended, it is 'not to be considered as having been repealed and re-enacted in the amended form; but the portions which are not altered are to be considered as having been the law from the time when they were enacted.' The rule particularly applicable to this case is thus stated in Sutherland on Statutory Construction (2d ed., sec. 238): 'Where there is an express repeal of an existing statute, and a re-enactment of it at the same time, or a repeal and a re-enactment of a portion of it, the re-enactment neutralizes the repeal so far as the old law is continued in force. It operates without interruption where the re-enactment takes effect at the same time.' "

[1] While abstractly there are well-understood differences in meaning between the words "revise" and "amend," they are interchangeable in the sense in which they are used in the constitutional provision quoted. [2] There is no shade of difference in meaning, under the rules governing the construction of statutes, between the "revision" of a particular act, or a section thereof, "to read as follows" and the "amendment" of the same act or section "to read as follows." In either case it is clear that the revising or amending act is intended as a substitute for the original statute or section, continuing in force that which is re-enacted and repealing what is omitted. [3] The act of 1921 is certainly "amendatory" of that of 1907, and the statement in the resolution of intention that the supervisors were "proceeding under and by virtue of the Road District Improvement Act approved March 21st, 1907, and acts amendatory thereof" was not inappropriate or misleading.

It is contended that, at the hearing upon the formation of the district, the supervisors denied plaintiff's right to be heard upon the question of the boundaries thereof. The

statute provides that if a majority of the owners of land make written "objection going to the entirety of the work described in the resolution of intention" the board of supervisors shall proceed no further in the matter, but that if a majority do not so object the board shall so find and thereupon proceed with the hearing. In this case the board found that a majority of the owners had not so objected and there is no complaint as to the regularity of the proceedings up to and including such finding. The statute provides that the board shall next "proceed to hear such objections as may be made to the grades." There were no such objections in this case. The next paragraph of the statute is as follows: "Thereafter, in the order of hearing shall be heard such objections as shall be made to the boundaries of the district as set forth in the resolution of intention. Objection to the grades or to the boundaries of the district may be made by an owner of land lying within the district upon the hearing without any written statement of the same."

Plaintiff testified that he was present at the hearing in the forenoon when the announcement was made that a majority of the owners of land had not filed written objections to the formation of the district; that "a very short period after that, the district attorney presented a resolution for the board to act upon"; that no member of the board "called for any protests or objections, or remarks, either on the subject of grades, or boundaries, or benefits, or anything of that nature"; that the board adjourned, after adopting the resolution, to 1:30 P. M.; that at the afternoon session he presented written objections to the boundaries of the district, as set forth in the resolution of intention, and requested that his own lands be excluded therefrom; and that the board refused him a hearing upon the ground that his objections were made too late. The minutes of the forenoon session of the board, material here, are as follows:

"The board proceeded to hear and consider protests on file and it being found that a majority of the owners of the land lying within the district as set forth in the resolution of intention, had not in writing made objection to the ordering of the work as an entirety;

"The chairman of the board then called for other protests and objections, if there were any to be made. Lewis Hilborn thereupon, on behalf of himself and others, made

objection orally to the boundaries of the district which were considered by the board. No objection to the grades were made.''

Following the foregoing is a copy of the resolution of the board, establishing the boundaries of the district as set forth in the resolution of intention and ordering the work to be done. The district attorney testified that before the board had ascertained whether a majority of owners had objected to the work in its entirety, ''Mr. Hilborn then addressed the board on the matter of the protests to the boundaries. . . . He didn't complete the talk that he was making at that time when Mr. Halliday returned with the lists [of owners of land], as amended by the recorder. That list was submitted by Mr. Halliday, who stated to the board the number on the list and the number of objections as a matter of record. Then Mr. Fleming [chairman of the board] I believe announced that there not being sufficient objections to the work, that the meeting would proceed. I believe that Mr. Fleming called for other objections and, at that time, Mr. Hilborn, as I recall, again took the floor; and at that time . . . I was called out of the room and what took place then for a few minutes I do not know, and I returned. . . . About the grades, what was done on that I don't recall, only this, the final words of Mr. Fleming, 'Are there any further objections?' He announced that from his chair. Nobody had anything to say. Nobody had any objections at that time. Mr. Pierce sat there in the front row. . . . He [Fleming] said 'No further objections?' and, there being no further objections, he said 'What is the next thing?' . . . I said 'I will go in my office and get the resolution and present it,' and I presented it, and there was a motion made by Mr. Connelly that the resolution be adopted, and it was moved and carried.'' There is other evidence in harmony with the foregoing and some in contradiction thereof, but enough has been stated to support the findings of the court to the effect that plaintiff was present at the hearing before the board of supervisors ''and did not orally or in writing make any objections as to the boundaries of said district,'' that ''after a full, thorough and complete hearing of the entire matter, said resolution ordering said work was introduced and read in open meeting . . . in the presence and hearing of said plaintiff, and no objections were

made or filed to the adoption of such resolution, and the same was thereafter adopted in open session by the unanimous vote of said board . . . at about 12 o'clock'' of the day of said hearing and that plaintiff's objections were not made until 2:30 P. M. of said day. **[4]** The courts cannot interfere with the determination of the board of supervisors in the establishment of the boundaries of a road district and the ordering of work to be done therein where the complaining property owner was given a reasonable opportunity to be heard in the proceeding before the board and there failed to object to any action taken by it. (*Dillingham* v. *Welch,* 179 Cal. 656 [178 Pac. 512].) Since plaintiff made no objection, at the hearing before the board, to the inclusion of his lands or the exclusion of other lands, it is unnecessary to consider the evidence bearing upon the question of boundaries, because the determination of the board, under such. circumstances, is conclusive.

The judgment is affirmed.

Burnett, J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 6, 1923.