[Civ. No. 6842.   Third Dist.   May 25, 1943.]

RALPH W. EVANS, as Building and Loan Commissioner, etc., Appellant, v. COUNTY OF SAN JOAQUIN et al., Respondents.

Robert W. Kenny, Attorney General, C. H. McDonald, Special Deputy Attorney General, Roy D. Reese and James E. Burns, for Appellant.

Raymond M. Dunne, District Attorney and Chester E. Watson, Deputy District Attorney, for Respondents.

ADAMS, P. J.—Appeal from a judgment for defendants in an action for refund of taxes.

In the year 1936 certain real property in San Joaquin County was sold to the state for delinquent taxes.  At that time

Pacific States Savings and Loan Company held a trust deed upon the property. This trust deed was subsequently foreclosed, the property being sold to Pacific States on December 28, 1936. Appellant thereafter took possession of the property and assets of Pacific States, and, desiring to redeem, requested of respondent auditor a statement of the amount necessary to be paid in order to redeem. The estimate furnished included personal property taxes, a lien for which had been impressed upon the real property by the county of San Joaquin for the years subsequent to the sale to the state. Appellant objected to the estimate as to such personal property taxes, claiming that they were not chargeable under the redemption statute in effect at the time of the sale. However, he paid the whole amount under protest, and filed a claim with the board of supervisors of the county for the amount of the personal property taxes. His claim having been rejected, he brought this action to recover the amount thereof. A demurrer to his complaint was sustained without leave to amend, apparently on the theory that the provisions of section 3817 of the Political Code as they existed at the time of the sale to the state required that, in order to redeem, payment must be made of personal property taxes made a lien upon the real property subsequent to its sale to the state. That section at the time of the sale provided:

"In all cases where real estate has been sold, or may hereafter be sold to the State for delinquent taxes and the State has not disposed of the same, the person whose estate has been or may hereafter be sold, his heirs, executors, administrators or other successors in interest shall, at any time after the same has been sold to the State and before the State shall have disposed of the same, have the right to redeem such real estate by paying to the county treasurer of the county wherein the real estate may be situated, the amount of taxes, penalties for delinquency, and costs due thereon at the time of such sale, and also all taxes that were a lien upon said real property at the time said taxes became delinquent; and also all unpaid taxes of every description assessed against the property for each year since the sale, as shown on the delinquent assessment rolls in the then permanent custody of the county auditor; or, if not so assessed, then upon the value of the property as assessed in the year nearest the time of such redemption, and also all costs and

expenses of such redemption, and penalties as follows, to-wit: . . ."

It was amended in 1937 by changing the words "all unpaid taxes of every description *assessed against* the property for each year since the sale," to read "all unpaid taxes of every description which are *a lien against* the property for each year since the sale." (Italics ours.)

Appellant insists that as the personal property taxes in controversy were levied for the fiscal years 1937-1938 and 1938-1939, they were not taxes due at the time of the sale within the language of the foregoing statute (*San Diego etc. Ry. Co.* v. *Shaffer*, 137 Cal. 103 [69 P. 855]), nor taxes that were a lien upon said property at the time said taxes became delinquent; and that they did not come within the requirement of that statute that the redemptioner must pay "all taxes of every description assessed against the property for each year since the sale," because personal property taxes are not "assessed against" real property; and that the Legislature has distinguished between taxes "assessed against" property and those which are a lien against it, by the very terms of section 3817, and particularly by the amendment of 1937.

It is conceded by respondent that the statute in effect at the time of a tax sale governs the right of redemption. (*County of San Diego* v. *Childs*, 217 Cal. 109 [17 P.2d 734]; *Teralta etc. Co.* v. *Shaffer*, 116 Cal. 518 [48 P. 613, 58 Am. St. Rep. 194].) But respondent contends that "taxes of every description assessed against the property" for years subsequent to the sale do include personal property taxes—that they are taxes "assessed against the property"—that section 3717 of the Political Code automatically "charges unpaid personal property taxes against the real property"; and that "assessed" should be construed as meaning "charged" (citing 6 C.J.S. 1022). Appellant replies that the words "assessed against" are not to be given the construction contended for by respondent; that "assessed" means given a value so that apportionment of taxes may be made, and that to give it the meaning "charged" would make other sections containing the word "assessed" meaningless.

"Assessed against," however, may have been intended to have a meaning different from that which might be applied

to the word "assessed," standing alone. But if "assessed against" was intended to mean "becoming a lien against," no reason appears why, having specified in section 3817, *supra,* as it formerly read, "taxes that were a lien . . . at the time said taxes became delinquent" in the one phrase, it should not have used the same language instead of "taxes . . . assessed against" in the one following.

It is said by Judge Harrison, in his dissenting opinion in *Allen* v. *McKay & Co.,* 120 Cal. 332, 340 [52 P. 828], that the word "assessed" is used in the Political Code with different significations, and therefore the meaning to be given to it in any particular case is to be determined from the context and the subject matter in reference to which it is used. The question for us to determine is, then, what meaning the Legislature intended to give to it in section 3817 as it existed at the time the property in the case before us was sold to the State. Apparently the amounts payable for redemption consisted of three classes of taxes, to wit: (1) taxes due at the time of sale; (2) taxes that were a lien at the time said taxes became delinquent; and (3) taxes "assessed against the property" subsequent to the sale. The fact that the Legislature refers in (2) above to "taxes that were a lien," and in (3) to taxes "assessed against the property," indicates that a distinction between the two was recognized; and the fact that in 1937 it changed the language of (3) by substituting the words "assessed against the property" to read "which are a lien against the property," indicates to our minds that a change of meaning was intended, and not a mere interpretation of the words formerly used.

■ Ordinarily any essential change in the phraseology of a statutory provision indicates an intention on the part of the Legislature to change the meaning of such provision rather than to interpret it. (23 Cal.Jur. 778.) In *Loew's Inc.* v. *Byram,* 11 Cal.2d 746 [82 P.2d 1], mandamus was sought to compel a tax collector to accept payment of general taxes on petitioner's property separately from special assessments under the Acquisition and Improvement Act of 1925 (Stats. 1925, p. 849; Deering's Gen. Laws, 1925-1927 Supp., Act 3276a), the collector contending that payments for special assessments could not be made separately from payment of county taxes. As originally enacted, section 41 of the act of 1925 provided that "Such special assessment taxes shall

be in addition to all other taxes levied for state and county purposes, or for municipal purposes (as the case may be), and shall be levied, computed, entered, collected and enforced in the same manner and by the same persons and at the same time and with the same penalties and interest as are other taxes for state and county purposes, or for municipal purposes (as the case may be), and all laws applicable to the levy, collection and enforcement of taxes for state and county purposes or for municipal purposes (as the case may be) are hereby made applicable to said special assessment taxes.''

That provision was amended in 1927 (Stats. 1927, p. 1376) to provide that ''Such special assessment taxes shall be in addition to all other taxes levied for county purposes or for municipal purposes, as the case may be, and shall be levied, computed, entered, collected and enforced in the same manner and by the same persons and at the same time and with the same penalties and interest as are other taxes for county purposes or for municipal purposes, as the case may be, and all laws applicable to the levy, collection and enforcement of taxes for county purposes or for municipal purposes, as the case may be, are hereby made applicable to said special assessment tax.'' At the time petitioner's rights became fixed, the statute as so amended was in effect. Subsequently and in 1931, a provision was added reading: ''Such special assessment taxes shall be collected and enforced together with, and not separately from, taxes for county purposes or for municipal purposes, as the case may be.''

The court said, p. 750:

''But it is insisted that the original section denied the right to pay separately and was fully as effective for that purpose as the amendment of 1931. There is a rule of statutory construction which leads to the contrary conclusion. That rule is stated and approved in *People* v. *Weitzel,* 201 Cal. 116 [255 P. 792, 52 A.L.R. 811], from which we quote: 'In *United States* v. *Bashaw,* 50 F. 749 [1 C.C.A. 653], it was said: ''The very fact that the prior act is amended demonstrates the intent to change the pre-existing law, and the presumption must be that it was intended to change the statute in all the particulars touching which we find a material change in the language of the act.''

'' ' ''Where changes have been introduced by amendment,

it is not to be assumed that they were without design; usually an intent to change the law is inferred." (*In re Segregation of School Dist.* No. 58, 34 Idaho, 222 [200 P. 138].) In *Rieger* v. *Harrington,* 102 Or. 603 [203 P. 576, 580], it was said: "By amending that statute, the Legislature demonstrated an intent to change the preexisting law, and the presumption must be that it was intended to change the meaning of the statute in all the particulars wherein there is a material change in the language of the amended act." To the same effect are the following authorities: *Springfield Grocer Co.* v. *Walton,* 95 Mo.App. 526 [69 S.W. 477]; *Duff* v. *Karr,* 91 Mo.App. 16; *Pierce* v. *County of Solano,* 62 Cal.App. 465 [217 P. 545]; *Shearer* v. *Flannery,* 68 Cal.App. 91, 94 [228 P. 549].' "

In *People* v. *Weitzel,* above cited, a section of the Penal Code dealing with offenses by members of common councils which formerly read "who receives or offers to receive any bribe is punishable," etc., was amended to read "who receives or agrees to receive any bribe upon any understanding," etc. The court held that this signified an intention on the part of the Legislature to change the existing law, and the court then quoted from *United States* v. *Bashaw,* as quoted in *Loew's Inc.* v. *Byram, supra.* (Also see *Young* v. *Three for One Oil Royalties,* 1 Cal.2d 639, 646 [36 P.2d 1065]; *Meyerfeld* v. *South San Joaquin Irr. Dist.,* 3 Cal.2d 409, 417 [45 P.2d 321]; *Estate of Todd,* 17 Cal.2d 270, 274 [109 P.2d 913]; *Estate of Broad,* 20 Cal.2d 612, 618 [128 P.2d 1]; *Lundquist* v. *Lundstrom,* 94 Cal.App. 109, 112 [270 P. 696]; 25 R.C.L. 1051; 59 C.J. 1097.)

Prior to the amendment of section 3817, supra, and subsequent thereto, section 3813 of the Political Code provided that *property sold to the state* should be "assessed" each subsequent year until a deed was made to the state. Section 3815 of that Code also provided during said times that property *assessed* pursuant to section 3813 should be redeemed only on payment of such subsequent assessments, costs, fees, penalties and interest. Section 3717 provided that every tax due upon personal property became a lien upon the real property of the owner thereof, from and after the first Monday in March of each year; and section 3718 made taxes due upon real property, and improvements thereon assessed to others, liens upon such land and improvements, etc. These sec-

tions indicate that the Legislature recognized and at all times had in mind a distinction between taxes "assessed" and taxes that became a lien, and they fortify our conclusion that the amendment of section 3817 made in 1937 was intended to effect a change in the law to provide that taxes of every description, whether taxes on personal property belonging to the owner of the real property or taxes "assessed against" the real property itself, which had become a "lien against" said property for each year since the sale, should be paid in order to effect a redemption, and that the section as it previously existed did not contemplate that in order to redeem, personal property taxes made a charge against the real property subsequent to the sale to the state, must be so paid.

We therefore conclude that plaintiff's claim for a refund should have been allowed, and that the trial court erred in sustaining defendants' demurrer to plaintiff's complaint without leave to amend.

The judgment is reversed.

Peek, J., and Thompson, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied July 22, 1943.