[Civ. No. 12575.   First Dist., Div. One.   Apr. 26, 1944.]

Estate of MARCUS HENRY, Deceased. THE DEPARTMENT OF INSTITUTIONS OF THE STATE OF CALIFORNIA, Appellant, v. PHIL C. KATZ, as Administrator, etc., Respondent.

Robert E. Hatch, John R. Golden and Clarissa Shortall for Appellant.

Henry F. Boyen and Frank J. Fontes for Respondent.

WARD, J.—The Department of Institutions appeals from an order of the probate court appointing the Public Administrator of the City and County of San Francisco administrator of the estate of Marcus Henry, deceased. It is the contention of appellant that, as a matter of law, it was entitled to letters of administration on such estate.

The facts are not in dispute and are as follows: Marcus Henry died intestate on November 24, 1942, at the Stockton State Hospital. At that time he was under commitment to the Department of Institutions, having been committed in December, 1941. At the time of his death he was a resident of San Francisco. Both the Department of Institutions and the Public Administrator applied for letters of administration.

The trial court found that all of the allegations of the petition of the Public Administrator are true. The petition alleged ''That the value and character of the estate of said deceased as far as known to your petitioner are unknown; That the names, ages and places of residence of the heirs at law and next of kin of said deceased are unknown; That your petitioner is informed and believes, and therefore alleges, said deceased died intestate.'' On the above facts the trial court further found ''that the right to administer the estate of said decedent of the Department of Institutions, if any, is subject to and subordinate to the right and priority of said Public Administrator to administer said estate.''

For a great many years the order of priority in which the probate court must issue letters of administration in the matter of deceased persons' estates has been fixed by section 422 of the Probate Code and its predecessor, section 1365 of the Code of Civil Procedure; and the determinative question presented here is whether by the enactment of the 1941 amendment to said section 6660 of the Welfare and Institutions Code the Legislature intended to and did in effect revise or amend section 422 of the Probate Code so as to alter or

change the order of priority established thereby for the issuance of letters of administration.

The preferential rights as provided by section 422 must be followed in accordance with the status of the parties. (*Estate of Herriott,* 219 Cal. 529 [28 P.2d 355]; *Estate of Olcese,* 210 Cal. 262 [291 P. 193].) Appellant contends that the purport of section 6660 is to create a new classification as though it were designated subsection 7(a), section 422, Probate Code. Any amendment to the provisions of section 422, or any statute that impliedly amends that section, should be specific, otherwise confusion may occur in the interpretation of section 422 and other sections in relation to the appointment of administrators. (See §§ 420, 423, 425, 426, 427.)

Section 6660 of the Welfare and Institutions Code (Stats. 1941, ch. 920, p. 2506) is not an amendment to chapter 4 of the Probate Code, which includes section 422, but is a distinct statutory provision primarily for the benefit of the insane in state hospitals. It provides that "If a person under commitment to the Department of Institutions dies, leaving any estate, and having no relatives at the time residing within this State, the Department of Institutions shall be entitled to administer the estate and to have letters of administration on the estate issued to the department." Assuming that it creates competency in the State Department of Institutions to act as administrator, it does not provide for priority over the Public Administrator. The words "shall be entitled to administer the estate," as used in section 6660 should therefore be interpreted as meaning one who is "legally competent" (§ 422, subd. 10); that is, one "entitled to letters" (§ 422). Immediately following "entitled to letters" appear these words—"in the following order." The word "shall" (§ 6660) does not add further force or weight; it merely emphasizes the intention of the Legislature that under certain conditions the Department of Institutions is a proper party to act as an administrator.

The term "any . . . person entitled" is general in its designation. It applies to persons in the same or inferior classes. (*Estate of Turner,* 143 Cal. 438 [77 P. 144].) If in the same class, the selection is discretionary with the court:

An administrator must be a resident of this state. (Prob. Code, §§ 401, 409, 420.) The words "having no relatives at the time residing within this State" (§ 6660) merely means that under no circumstances would the Department of Insti-

tutions be entitled, that is, be eligible for appointment, if decedent had relatives residing in this state at the time of his death. In the event of the appointment of the department, if the decedent had a surviving spouse, parent, etc., or if a relative in this state requested the appointment of a competent person, the letters if issued to the department should be revoked. (Prob. Code, § 450.)

A consideration of the history of the legislative enactments further supports the conclusion reached herein. In 1903, Political Code, section 2179, the forerunner of Welfare and Institutions Code, section 6660, provided that the secretary of the state commission in lunacy, in case an "insane person has no guardian, may apply to a court of competent jurisdiction for the appointment of a guardian of the estate of such insane person" if the person committed to a state hospital should be the owner of property, real or personal. The purpose is plain. If the person had sufficient estate it would be the duty of the guardian to pay for necessary expenses of support and maintenance of the inmate at the hospital. (Stats. 1903, ch. 364, p. 506.) In other words, the appointment of the secretary would insure the payment of the state claim.

In 1909, Political Code, section 2179, was amended to provide that "Where an insane person shall die in a state hospital leaving an estate, and having no relatives or guardian, or in case the secretary of the state commission in lunacy shall be such guardian, such secretary may apply for letters of administration on such estate." (Stats. 1909, ch. 65, p. 72.) There is no provision in the foregoing amendment that the secretary should be preferred to any other legally competent person.

In 1929 section 2179 was amended as follows: "Where an insane person under commitment to a state hospital shall die leaving any estate, and having no relatives at the time residing within this state, the secretary of the state department of institutions shall be entitled to administer said estate and to have letters of administration on such estate issue to him *in preference to any other person.*" (Italics added.) (Stats. 1929, ch. 761, p. 1485.) If the deceased inmate had relatives within the state the provision did not apply. For the first time it appears that it was necessary to declare legislatively that the secretary of the commission was a competent person "entitled to administer" and that under such circum-

stances he should have preference over any "other person" legally competent. (Prob. Code, § 422, subd. (10).) If not legally competent the secretary was not entitled to appointment and therefore could have no "preference." Stated in another form, before "preference" could be considered it must be shown that the secretary was "entitled" to administer upon proof that he was a "person legally competent" to administer. (Prob. Code, § 422, subd. (10).)

In 1937 Political Code, section 2179, was omitted and Welfare and Institutions Code, section 6660, enacted practically in the language of section 2179 as it appeared in 1929, but the provision that *preference* should be given to the secretary of the State Department of Institutions was eliminated. The continuation of certain clauses in force was merely a substitution for the original act, but the elimination of a portion of the original section is a repeal of that particular provision. (*Pierce* v. *County of Solano*, 62 Cal.App. 465 [217 P. 545]; *Loew's Inc.* v. *Byram*, 11 Cal.2d 746 [82 P. 2d 1]; *People* v. *Western Fruit Growers*, 22 Cal.2d 494 [140 P.2d 13]; *Evans* v. *County of San Joaquin*, 58 Cal.App.2d 799 [138 P.2d 805]; *Greeley* v. *Suey Sing Benev. Assn.*, 28 Cal.App.2d 536 [83 P.2d 54].) The revision of the provision indicates that the secretary was still a competent person and therefore eligible to appointment as administrator, but without preference over any other legally competent person referred to in subdivision (10) of section 422, Probate Code. In all subsequent amendments to section 6660 of the Welfare and Institutions Code no reference is made to a preference. That provision was effectively repealed.

Appellant in the following language attempts to justify its position by reference to the provisions of section 6660 as they refer to guardianship proceedings: ". . . it is the legal guardian of many estates, by virtue of appointments by the superior courts, of inmates who are still living. Similarly, it assumes to help and protect the property rights of inmates in innumerable instances where appointments have not been made.

"Thus, for instance, frequently it comes to the Department's attention that inmates have *possible* claims and rights in connection with estates and property, and without action and cooperation of the Department of Institutions there is no one to look out for such matters." The title of chapter 920 (Stats. 1941, § 6660) refers only to the administration

of ''inmates' '' estates. The statute provides for the appointment of the Department of Institutions when the incompetent ''has no guardian.'' If appellant's contention should be upheld, the department under the wording of the statute —''shall be entitled to administer''—would have priority over the guardian of the estate or the Public Administrator irrespective of any interest as creditor or otherwise in the estate of the deceased.

Referring once more to appellant's contention that Probate Code, section 422, has been amended to create a subdivision which might be designated 7 (a), we are confronted with constitutional prohibitions. Section 24 of Article IV of the California Constitution declares: ''. . . No law shall be revised or amended by reference to its title; but in such case the Act revised or section amended shall be reenacted and published at length as revised or amended. . . .'' In applying the foregoing constitutional provision it has been held that if a subsequent act leaves in full operation and effect all of the provisions of a prior statute to which the subsequent act relates, the constitutional provision above quoted is not violated by failure to reenact or publish the prior act or section as revised or amended; but that if on the other hand the subsequent act has the effect of altering, revising or changing the operation or the provisions of an existing law or section in any respect, then the failure to observe the constitutional requirement brings such purported revision or amendment within the evils aimed at by the inhibition of the Constitution. (*Hellman* v. *Shoulters,* 114 Cal. 136, 150 [44 P. 915, 45 P. 1057]; *Matter of Coburn,* 165 Cal. 202, 211 [31 P. 352].)

The purpose of the constitutional provision is to prevent the title of a subsequent act from being made a cloak or artifice to distract attention from the substance of the act and to protect legislators and the public from being entrapped by misleading titles to bills whereby legislation relating to one subject might be obtained under the title of another. (*Heron* v. *Riley,* 209 Cal. 507 [289 P. 160]; *People* v. *French,* 61 Cal. App. 275 [214 P. 1003].)

If appellant's contention is correct—that the purpose and effect of the enactment of the 1941 amendment to section 6660 was to establish a new priority by adding a new subdivision—then it must be held that it is unconstitutional insofar as it attempts to revise the order of priority fixed by section 422 of the Probate Code, for the reason that neither

in the enactment of the 1941 amendment to section 6660 nor any of its predecessors was any reference whatever made to a revision of section 422 of the Probate Code or its predecessors, nor has section 422 been reenacted and republished at length as so revised and amended. If, on the other hand, as respondent contends and the trial court held, the 1941 amendment to section 6660 does not revise or alter the order of priority of the issuance of letters of administration but merely grants to the Department of Institutions the right to letters pursuant to classification (10) of section 422 as it now stands, the 1941 amendment to section 6660 is not violative of the constitutional provision above quoted. ▪ It has been repeatedly declared that "it must be presumed that the legislature has considered and discussed the constitutionality of all measures passed by it. Certainly it can never be presumed that the legislature intended to pass an unconstitutional act, or do anything unconstitutional or beyond its power. If there is an inference which may be drawn from the act, the effect of which is to render the act unconstitutional, it is to be assumed, in the absence of an express provision to that effect, that such inference was not intended." (5 Cal.Jur., pp. 629-630.) ▪ Therefore, applying the well-settled rules governing the determination of the constitutionality of legislative acts, it cannot be here presumed that the Legislature intended to violate the constitutional provision above quoted.

Incidentally, section 422 was amended subsequent to the last amendment to section 6660 and no reference was made therein to the provisions of section 6660.

We are in full accord with all that is said in the dissenting opinion respecting the imperative duty of courts to abstain from attempting to exercise legislative functions. But after redeclaring these "primordial rules of construction" with moving force and fluency, and with the implied admonition that they should be jealousy guarded and preserved, the dissenting opinion proceeds at once to violate those rules in a pronounced fashion by assuming the exclusive legislative function of revising and rewriting section 422 of the Probate Code, first, by inserting therein an entirely new provision, to be known as classification 7½ or 7(a), the obvious effect of which would be to establish a new and different order of priority in which probate courts are required to issue letters of administration, and secondly, by modifying the first classification set forth in section 422 by giving priority to the De-

partment of Institutions of the right to letters over the appointee of a surviving non-resident spouse.

It was doubtless within the province of the Legislature, if it saw fit so to do, thus to revise and rewrite section 422 of the Probate Code to conform to the provisions of section 6660 of the Welfare and Institutions Code; but to accomplish that purpose it was necessary to follow the mandatory requirements of section 24 of Article IV of the state Constitution. Therefore, since the Legislature made no attempt at all to revise section 422 in any manner, certainly the courts, under the guise of giving effect to a section of the Welfare and Institutions Code, which makes no reference whatever to any section of the Probate Code, may not assume to exercise the legislative function of revising and revamping a Probate Code section to conform to the needs of the Welfare and Institutions Code. In view of the conclusion reached herein the remaining contention of respondent that the statute is unconstitutional need not be considered.

The only purpose in the passage of section 6660 was to make the department eligible, otherwise it could not act under any of the subdivisions of section 422.

Appellant falls within the provisions of subdivision (10) of section 422, and letters of administration may be granted when ''persons having priority fail to claim letters for themselves.'' (Prob. Code, § 427; *Estate of Turner, supra.*)

The order appealed from is affirmed.

Knight, J., concurred.

PETERS, P. J.—I dissent.

Section 1858 of the Code of Civil Procedure provides that: ''In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all.'' This section embodies several primordial rules of construction. There are many cases holding that it is the function of a court to declare the law, not to make it; that the courts should construe, declare, administer and enforce a statute as enacted by the Legislature, and should not, in the guise of construction, substitute its idea of the intent of the law for the obvious intent of

the Legislature; that courts should enforce a statute in its entirety and should not, because of its ideas of policy, disregard or, in effect, repeal, any portion of a statute; that if a statute works a hardship upon a certain class of persons resort must be had, not to the courts, but to the Legislature, which alone has the power to modify statutory rules. (See many cases collected and commented upon 23 Cal.Jur. p. 727, § 108; 10 Cal.Jur. Ten-Year Supp. p. 392, § 108; 1942 Pocket Part for vol. 10 of Ten-Year Supp. p. 111, § 108; 1943 Secondary Pocket Part for vol. 10 of Ten-Year Supp. p. 26, § 108; 2 Sutherland, Statutory Construction, 3d ed. p. 334, § 4702.)

I believe that a reading of section 6660 of the Welfare and Institutions Code, and of section 422 of the Probate Code, will demonstrate that the majority opinion, in the guise of construction, has, in fact, repealed a material portion of section 6660 in direct violation of the above quoted rules of construction. The majority opinion does not interpret the section, it redrafts it. Were I a legislator, I believe I would agree with the conclusions of the majority, as a judge I cannot do so.

As amended in 1941 (Stats. of 1941, ch. 920, p. 2506), section 6660 of the Welfare and Institutions Code provides that where an incompetent person, who has been committed to the Department of Institutions, has no guardian, but is the owner of property, the department may apply to a court for appointment as guardian of the estate of the incompetent. The second paragraph of the section provides that: "For the purposes of this section, the Department of Institutions is hereby made a corporation and may act as executor, administrator, guardian of estates . . . under appointment of any court or by authority of any law of this State, and may transact business in such capacity in like manner as an individual. . . ." The third paragraph is the one particularly involved in this proceeding. The first sentence of this paragraph provides: "If a person under commitment to the Department of Institutions dies, leaving any estate, and having no relatives at the time residing within this State, the Department of Institutions shall be entitled to administer the estate and to have letters of administration on the estate issued to the Department."

The section goes on to provide that the department shall be appointed guardian or administrator without bond, but

requires the secretary designated by the department to give a bond of not less than $100,000 for the joint benefit of the several estates and the state. The section also permits the department to "receive such reasonable fees for its services as such guardian or administrator as the court allows," and provides for the disposition of these fees.

This section says, without any possibility of doubt, that if a person under commitment shall die leaving an estate, and such person shall have no relatives residing in this state, the Department of Institutions "shall be entitled to administer the estate" and to have letters issued to it. Is there any ambiguity in that language? Of course not. But, says the majority opinion, this statute must be construed with section 422 of the Probate Code, which provides, generally, for the order in which persons shall be entitled to administer estates. The first seven subdivisions of that section provide in what order the relatives of· the decedent shall be entitled to letters. After the relatives, subdivision 8 provides that the public administrator shall next be entitled, subdivision 9 provides for creditors, and subdivision 10 for "any person legally competent."

The majority opinion says that the only effect of section 6660 of the Welfare and Institutions Code was to render the Department of Institutions competent to act as administrator, and that the department, therefore, falls within class 10 of section 422 of the Probate Code. Undoubtedly section 6660 rendered the department competent to act as administrator, but that is not all it did. By express language it provided not only that it could act, but when it was "entitled" to act. The pertinent language of the section is that if a person under commitment to the department dies leaving any estate "and having no relatives at the time residing within this State" the department "shall be entitled to administer the estate and to have letters of administration on the estate issued to the department." The two phrases quoted state, without ambiguity, that, if such a person dies and such person has no relatives residing in this state, the department is entitled to have letters issued to it. Stated another way, unless the decedent leaves relatives residing in this state the department is entitled to administer. The interpretation contained in the majority opinion completely disregards the phrase first quoted referring to relatives. Section 422 of the Probate Code is a general section referring to the persons

entitled to administer estates. Section 6660 of the Welfare and Institutions Code is a specific section referring to who shall be entitled to administer estates of persons of a particular class—i. e., persons committed to the department. Under elementary principles a general statute is controlled by a specific statute, particularly where, as here, the specific statute is subsequent in time. (See cases collected 23 Cal. Jur. p. 743, § 119.)

The two statutes are not inconsistent. Section 6660 of the Welfare and Institutions Code created a new independent class—that is, as to committed persons, leaving no relatives residing in this state, the Department of Institutions is entitled to administer. The legal effect of the amendment was to add, by special statute, and by implication, a new class between class 7 and 8 of the old general statute. The majority opinion, in apparent realization of the fact that the construction contained therein disregards the plain language of section 6660, attempts to justify such strained construction by the argument that otherwise section 6660 would violate section 24 of Article IV of the Constitution. Resort is then had to the argument that statutes should be construed so as to make them constitutional, if possible. The basic premise of this argument is unsound. Section 6660 of the Welfare and Institutions Code did not "amend" section 422 of the Probate Code within the meaning of the constitutional provision in question. Section 6660 is an independent statute which affects section 422, but it does not "amend" it. Every new law dealing with a particular subject matter does not have to re-enact all the old laws dealing with that subject. If the rule stated and applied by the majority were the law, every new statute *in pari materia* with others would be unconstitutional unless it re-enacted all the old statutes. That, of course, is not the law.

There can be no doubt but that section 6660 affects section 422, and, in legal effect, amends, by implication, the last mentioned section. But the law is well settled that the constitutional provision in question has no application at all to situations where a new provision amends by implication an old one. In disposing of the identical argument made by the majority in the instant case, the Supreme Court, in *Matter of Coburn,* 165 Cal. 202, 211 [131 P. 352], stated: "Finally, the constitutionality of the act is questioned on the ground that it seeks to revise or amend an existing law (i. e., the

Code of Civil Procedure) by reference to its title, instead of reenacting and publishing at length the act revised or section amended. (Const., Art. IV, § 24.) If the adoption of section 1767 amended the existing law as declared in the Code of Civil Procedure, it amended it by implication only, and it is established by our decisions that the constitutional provision relied upon has no application to such implied amendments. (*Hellman* v. *Shoulters,* 114 Cal. 136, 153 [44 P. 915, 45 P. 1057]; *Deyoe* v. *Superior Court,* 140 Cal. 490, [98 Am.St.Rep. 73, 74 P. 28].) Such, too, is the prevailing rule in other states which have a similar constitutional restriction. (*People* v. *Mahaney,* 13 Mich. 481; Cooley on Constitutional Limitations, 7th ed., 216 and cases cited.)''

This same well settled rule was stated as follows in *People* v. *Peete,* 54 Cal.App. 333, 368 [202 P. 51]: ''If it be true, as counsel assert, that section 1089 by implication amends or repeals section 1123 of the Penal Code, the section may not for that reason be held to be unconstitutional. Section 24 of article IV of the constitution declares that 'no law shall be revised or amended by reference to its title, but in each case the act revised or section amended shall be re-enacted and published at length as revised or amended.' It is established by the decisions of this state that an act is not revised nor a section amended, within the purview of the above inhibition, by an act which adds a new code section and does not purport to repeal or amend any of the sections of the code to which it is added. An amendment by implication is in no proper sense of the word an 'amendment,' within the meaning of this constitutional provision. It is not within the evils aimed at by the inhibition. [Citing cases.]'' In addition to the above two cases, and the cases cited therein, see *Pennie* v. *Reis,* 80 Cal. 266 [22 P. 176]; *University of California* v. *Bernard,* 57 Cal. 612; *Evans* v. *Superior Court,* 215 Cal. 58 [8 P.2d 467]. The majority opinion not only attempts to exercise the legislative function by interpreting out of the section a material portion thereof, but attempts to overrule the legal principle established by these cases.

There is nothing in the history of section 6660 of the Welfare and Institutions Code that leads to any other conclusion than that the Legislature has provided that in cases falling within the section, after relatives, the Department of Institutions shall be entitled to letters. The majority opinion correctly points out that the forerunner of the section was

section 2179 of the Political Code, adopted in 1903. That section permitted the secretary of the state commission of lunacy, where the insane person had no guardian, to apply to be appointed guardian. Then in 1909 the Legislature provided that when an insane person shall die in a state hospital and "having no relatives or guardian," or where the secretary was already guardian, the secretary may apply for letters of administration. Thus, for the first time appears the concept that where the incompetent has no relatives the department may act as administrator. In 1929 the section was amended to provide that where the insane person dies in a state hospital "having no relatives at the time residing in this state" the secretary shall be entitled to letters "in preference to any other person." Then in 1937, when the section was carried over into the Welfare and Institutions Code as section 6660, the provision in reference to preference was omitted. In 1941 it was again added in the language quoted in the first part of this opinion. Thus is to be observed a quite consistent policy since 1929, and with the exception of the period 1937-1941, to provide that the Department of Institutions or its secretary should be entitled to letters after relatives residing in this state.

Respondent makes several arguments not mentioned in the majority opinion which should be mentioned. It is urged that if section 6660 of the Welfare and Institutions Code be interpreted as it is in this dissent, it is unconstitutional for several reasons. It is urged that section 6660 is a limitation on local self-government. Under section $7\frac{1}{2}$ of article XI of the Constitution, a county may frame a charter providing for public administrators. The charter of the City and County of San Francisco provides for such an officer. Sections 1140 and 1141 of the Probate Code set forth the duties of a public administrator. It is argued that if the powers and duties of the public administrator can be changed by "special acts of the State Legislature, then any attempt to provide for such powers and duties in the charter is an idle act. . . ." (Resp. Br. p. 11.) Because the Constitution provides that counties may have public administrators, and the statutes prescribe their duties and powers, it does not follow that the Legislature cannot, by separate statute, limit their duties in favor of another class of persons or another agency of the state. As a matter of fact, section 422 of the Probate Code fixing

the order in which persons shall be entitled to administration, limits the rights of public administrators and relegates them to class 8. As already pointed out, all that section 6660 of the Welfare and Institutions Code does is to create a new classification.

Respondent also objects to the provision that the department, unlike most other administrators, is not required to file a bond in each estate. While no specific bond is required for each estate—a needless expense when a state agency is involved—the act does require that the secretary or other officer designated by the department must give a bond in such amount as may be deemed necessary by the director of the department but which in no case may be less than $100,000. This bond is intended to protect the estates administered and the State of California.

Section 6660 provides: ''The Department of Institutions shall receive such reasonable fees for its services as such guardian or administrator as the court allows.'' Respondent contends that since the Probate Code fixes the fees of administrators, to allow a special rule for the department would be a violation of paragraph 12, section 25, article IV of the Constitution which provides that the Legislature shall not pass special or local laws ''Affecting estates of deceased persons, minors, or other persons under legal disabilities.'' No fees have been awarded to the department in the instant case, so that this issue is not now before the court. However, it is the duty of the courts to interpret statutes so as to uphold them, if reasonably possible. The obvious interpretation of the phrase ''reasonable fees for its services . . . as the court allows'' is that the department is entitled to such fees as have been declared by the Legislature to be reasonable in section 901 of the Probate Code. So interpreted, the statute simply gives to the department, as guardian or administrator, the same fees as are allowed to other guardians and administrators.

Respondent admits that corporations may be formed by special act for a public purpose, but argues that the administration of the estate of a deceased person is not a public purpose. This argument loses sight of the rather obvious consideration that administration of estates of deceased persons in certain instances becomes a public responsibility, i. e., when they have no relatives. If the people of the state have suffi-

cient interest in such estates to furnish county officials to administer them, then surely there is sufficient public purpose in administering the estates of persons who die in state institutions without relatives, to warrant making the department a corporation for that purpose. The purpose is clearly a public purpose.

Respondent quotes [Stats. 1891, p. 490, as amended] Deering's General Laws [1937], Act 1749, page 880, section 1, which provides that private corporations acting as executors, administrators, or guardians must have a paid-up capital of $250,000. This argument is predicated on the theory that the department is made a private corporation. It is not. It is a public corporation. Because this requirement is made for private corporations, it does not follow that different standards may not be set up for public corporations.

Finally respondent argues that section 6660 of the Welfare and Institutions Code creates an arbitrary classification of persons in violation of the Constitution. It should be noted that this section also provides that the department may become the guardian of the estates of incompetent persons. Evidently the purpose of the legislation was to protect incompetents committed to the department, during their lifetime, by permitting the department, where there are no relatives residing in this state, to be appointed guardian of such incompetent, and to protect the estates of such incompetents after their death by permitting the department to administer them. Inmates of such institutions frequently have claims and rights against third persons. The department is in a position to protect such inmates and their estates. In most cases where the department will be entitled to administer the estate of such incompetent, it will already be administering that estate as guardian. These various considerations obviously motivated the Legislature in making the classification. The classification is a reasonable one and is not arbitrary.

In my opinion the order appealed from should be reversed.

Appellant's petition for a hearing by the Supreme Court was denied June 22, 1944.