[S. F. No. 18068. In Bank. May 18, 1951.]

FLOYD A. RAINS, Appellant, v. COUNTY OF CONTRA COSTA et al., Respondents.

Todd & Todd and Henry C. Todd for Appellant.

Francis W. Collins, District Attorney, and Charles Hemmings, Deputy District Attorney, for Respondents.

GIBSON, C. J.—Plaintiff, suing as a taxpayer, seeks to enjoin certain officials of Contra Costa County from paying compensation to, or certifying the appointment of, defendant Degnan as medical director of the county hospital, and to have an ordinance, which removed the medical director and others from civil service, declared invalid. Judgment was entered for defendants, and plaintiff has appealed.

In May, 1944, the board of supervisors adopted ordinance 325 establishing a merit system for county employees pursuant to the County Civil Service Enabling Act, now sections 31100-31113 of the Government Code. All employees were thereby placed under civil service except elected officials, casual employees of county institutions, members of commissions, persons serving without compensation, and certain investigators and others employed by the sheriff and district attorney. Thereafter, as required by the enabling act, ordinance 325 was submitted to and ratified by the electors of the county. The ordinance provided that it could be amended by a four-fifths vote of the supervisors without approval by the people, but that "no amendment repealing this Ordinance shall be effective unless the proposition of its repeal shall first have been submitted" to the electors and approved by a majority vote.

In 1948, by four-fifths vote, the supervisors adopted ordinance 471 which amended ordinance 325 by including in the exempt categories the medical director of the county hospital and all physicians and surgeons serving the county. Defendant Degnan, a doctor of medicine, was thereafter appointed medical director without being required to take a civil service examination, and plaintiff seeks to prevent payment of his salary, claiming that ordinance 471 is invalid and ineffective.

The principal question is whether ordinance 471 amounts to a repeal within the meaning of the provision of ordinance 325 that no repeal shall be effective until approved by the voters. This provision refers to both amendment and repeal, and it appears that the clear intent of the ordinance is to deprive the supervisors of the power to destroy or substantially impair the civil service system without approval by the voters, but at the same time to permit the supervisors to amend the ordinance and make such changes and modifications as would not constitute a substantial impairment of the system. This is in accord with the general definitions of the terms, since repeal ordinarily means revocation, rescission, abrogation or destruction, whereas amendment involves an alteration or change, as by addition, taking away or modification. (Webster's New Internat. Dict.; 3 Words and Phrases, 319-321; 37 Words and Phrases, 5-6.)

In this case ordinance 471 removed from civil service a very limited class of employees consisting of the medical doctors serving the county. The type of work done by medical men, the times and hours when such work must be done, possible difficulties in obtaining medical men in that county for civil service positions, the general scarcity of doctors, and many other factors may have influenced the supervisors to conclude that the system as a whole would work more efficiently, and that the county would derive greater benefits, if this limited professional group were excluded. While opinions differ as to the advisability of bringing or retaining certain kinds of employees under civil service, experience may demonstrate the wisdom of adding certain classes or eliminating others, and here both the language and the general purpose of ordinance 325 are consistent with permitting some degree of elasticity. The record does not indicate that ordinance 471 was part of an attempt to destroy the civil service system by piecemeal amendment, and we cannot say that there was any substantial impairment. Accordingly, it must be held that the supervisors had power to adopt ordinance 471 and that it was not a repeal within the meaning of ordinance 325.

Other contentions made by plaintiff are without substantial merit and need not be discussed. Likewise, in view of our determination that ordinance 471 was a valid amendment of ordinance 325, we need not pass on the further question whether the supervisors could limit their power to take future

legislative action by specifying in ordinance 325 the manner in which it might be modified or repealed.

The judgment is affirmed.

Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I dissent. Pursuant to statute (Gov. Code, § 31100 et seq.) the board of supervisors of Contra Costa County passed an ordinance outlining a complete and detailed plan of civil service for county employees. It was submitted to and approved by the voters of the county as required by the statute (Gov. Code, § 31105). It contains a provision that it may be amended (1) by a four-fifths vote of the supervisors without submitting the same to a vote of the people, (2) "but no *amendment* repealing" it shall be effective unless approved by the people. Nevertheless the supervisors amended the ordinance by removing a group of county employees from civil service who were within its provisions and placing them in an exempt category without submitting the amendment to the voters. The question is, therefore, whether it was intended that the civil service system could be substantially impaired without the approval of the people.

The provision expressly dealing with this subject is clear enough. It says, as above seen, that (1) the ordinance may be amended by the board, (2) but no *amendment* repealing it is valid unless approved by the people. It is not reasonable to say that the second part—repeal by amendment—refers only to a repeal of the ordinance in its entirety by one measure as distinguished from a repeal of part of it, for the first part—the authority of the supervisors to amend—also mentions an amendment of the ordinance rather than a repeal of it *or a part thereof*. It is not to be supposed that the supervisors could not amend the ordinance unless it was amended *in toto*. Therefore the ordinance should read: (1) The board may amend it or any part thereof (2) but no amendment repealing it or a part thereof is valid unless approved by the people. Under that interpretation, and the *literal* reading of the ordinance, the board alone could adopt *no amendment which had the effect of repealing a part* of the ordinance by omission of material or by additions which would impliedly repeal other parts. If the provision involved is read literally it means that no amendment could be made except by the voters except one which in no way altered any part of the

ordinance. That follows from the wording of the second part of the provision that no *amendment* repealing the ordinance may be passed by the board. That recognizes that an "amendment" of a statute may, in effect, *repeal* a portion of it although it does not purport to do so, for if the amendment *omits* part of the content of the portion amended, such part is repealed. *Thus no amendment which has the effect of repealing any part of the ordinance may be passed by the board.* The board could only add to the ordinance in such fashion that the effect would be not to change any of the then existing contents of the ordinance. It is not necessary to go that far however. It may be said that the two parts appear to be inconsistent on their face but must be harmonized in order to give effect to each as far as possible. This suggests that the two parts should be construed to mean that under the first part, the board alone may amend the ordinance or any part thereof so long as the amendment does not impair the civil service system—the heart of the ordinance. It may alter procedural matters and other details of which there are many; it may make changes which further the main purpose of the ordinance. Under the second part, only the voters may make changes which impair or tend to destroy the main thesis— a civil service system for county employees.

There are many factors which are compellingly persuasive for the foregoing construction. First, the ordinance recites that it is adopted "in order to establish an equitable and uniform procedure for dealing with personnel matters through a Civil Service Commission, and to place County employment on a merit basis for the purpose of obtaining the highest efficiency and assuring that the best qualified persons available shall be brought into the service of the County, . . ." It sets up a detailed scheme for the system. *"All regular county employees* shall be included in the merit system hereby adopted. . . ." (Italics added.) The only exceptions are elected officials, commission members and special employees. Thus the vital principle is that all county employees with very limited exceptions are protected by civil service tenure.

Second, civil service laws should be liberally construed to the end that the system shall be preserved and a return to the spoils system avoided. (*Steen* v. *Board of Civil Service Commrs.*, 26 Cal.2d 716 [160 P.2d 816]; *Allen* v. *McKinley*, 18 Cal.2d 697 [117 P.2d 342]; *Almassy* v. *Los Angeles County Civil Service Com.*, 34 Cal.2d 387 [210 P.2d 503].) Thus

even though the interpretation of the majority may be plausible, the one set forth above should be followed because otherwise the whole system is put in jeopardy.

Third, if the board may exempt one group of employees from the system, it has it within its power to destroy it completely. It may whittle away at the system by the exemption process, group by group, ordinance by ordinance, though adopted on the same day. Thereby it may accomplish indirectly what it cannot do directly—destroy the system in one fell stroke. Certainly the right of the people to pass upon the issue is not to be so lightly brushed aside. The majority opinion holds, by implication at least, that this could not be done; that this court would strike down such an action. It does not say upon what legal basis it could arrive at such a conclusion. The question is one of *power*. If the board has the *power* to amend the ordinance by exempting *one* group of employees from civil service then there is no rule of law limiting it to that group. It may proceed to exempt all employees in one ordinance or reach that result piecemeal, group by group, ordinance by ordinance.

The majority holds that the board could not substantially impair the civil service system. That position is wholly inconsistent with the major premise of the majority opinion that the board has power to repeal a part of the ordinance by amendment. Under the majority view there is nothing in the ordinance which places any such limitation on the board. It is said in one breath that the board has power to repeal the ordinance by amendment and in the next that such cannot be done if too much is repealed. But the majority does not say how much is too much. This is left for future conjecture and speculation.

Fourth, viewing the requirement of a vote of the people—the second part—either as an initiative or referendum provision, the rule must be applied that such provisions are to be liberally construed to preserve the right to the people to vote on such measures. (*Perry* v. *Jordan,* 34 Cal.2d 87, 91 [207 P.2d 47] ; *Gage* v. *Jordan,* 23 Cal.2d 794 [147 P.2d 387] ; *Warner* v. *Kenny,* 27 Cal.2d 627 [165 P.2d 889] ; *Hunt* v. *Mayor and Council of Riverside,* 31 Cal.2d 619 [191 P.2d 426] ; *McFadden* v. *Jordan,* 32 Cal.2d 330 [196 P.2d 787].) Thus we should not take a narrow view of the right of the people to pass upon any proposed inroads on the civil service system adopted by them.

Fifth, it has been held that "amendment"—the first part—may mean something which betters rather than impairs the act amended. In *McFadden* v. *Jordan, supra,* 32 Cal.2d 330, 333, quoting from *Livermore* v. *Waite,* 102 Cal. 113 [36 P. 424, 25 L.R.A. 312], in speaking of amending or revising the Constitution this court said: "The very term 'constitution' implies an instrument of a permanent and abiding nature, and the provisions contained therein for its revision indicate the will of the people that the underlying principles upon which it rests, as well as the substantial entirety of the instrument, shall be of a like permanent and abiding nature. On the other hand, the significance of the term 'amendment' implies such an addition or change within the lines of the original instrument as will effect an improvement, or better carry out the purpose for which it was framed." Paraphrasing, the very establishment of a comprehensive civil service system by the people implies a permanent and abiding structure and indicates the will of the people that the "underlying principle upon which it rests" shall continue to exist until changed by them. An amendment by the board without their consent implies such an addition or change within the lines of the original act as will effect an improvement or better carry out the basic purpose. The amendment here adopted is just to the contrary.

I would therefore reverse the judgment.