[Civ. No. 10912. Third Dist. Apr. 12, 1965.]

PLACER COUNTY EMPLOYEES ASSOCIATION et al., Plaintiffs and Respondents, v. BOARD OF SUPERVISORS OF PLACER COUNTY, Defendant and Appellant.

Daniel J. Higgins, District Attorney, and L. B. Elam, Deputy District Attorney, for Defendant and Appellant.

Wayne Wylie for Plaintiffs and Respondents.

Lemaire & Mohi as Amici Curiae on behalf of Plaintiffs and Respondents.

FRIEDMAN, J.—In 1961 the Placer County Board of Supervisors adopted an ordinance establishing a civil service system covering all county employees except those in 18 categories or positions called the "unclassified service." The ordinance was adopted pursuant to the County Civil Service

Enabling Law. (Gov. Code, §§ 31101-31115.) As required by the enabling law, the ordinance was submitted to the county electors at an election in June 1962 and approved by them.[1] Section 14.117 of the county ordinance declares: "No ordinance repealing or amending this ordinance which nullifies the basic principle of the Civil Service system contemplated by this Chapter and the County Civil Service Enabling Law shall be effective unless a proposition of such repeal or amendment shall have been submitted to an election and approved by a majority vote of the electors voting on the proposition."

Two positions in the civil service were those of Addressograph Operator and Duplicating Supervisor. In 1963 the supervisors decided to establish a central servicing bureau or agency to perform "data processing services" for a number of county departments, utilizing newly purchased tabulating and processing machines. ▪ Two ordinances were adopted by the board. One was Ordinance No. 592, which abolished the positions of Addressograph Operator and Duplicating Supervisor in the classified service. The second was Ordinance No. 593, which added a new position, Supervisor of Central Services, to the list of unclassified or non-civil-service positions.

Petitioners filed this mandate proceeding against the county, contending that the civil service ordinance of 1961 demanded submission of the two 1963 measures to the electors. The court ruled that Ordinance No. 592 need not be submitted to election, but that Ordinance No. 593 could not be implemented without prior approval by the electors. The county appeals.

▪ The primary question is whether section 14.117 of the county ordinance (requiring electoral approval of any repeal or amendment which "nullifies the basic principle" of civil service) should be construed to cover the 1963 amendments eliminating two civil service positions and establishing the non-civil-service position of Supervisor of Central Services. As a matter of statutory draftsmanship, the quoted phrase

[1] Government Code section 31105 provides: "The ordinance adopting a civil service system shall not go into effect until the proposition of its approval has been submitted to a vote of the qualified electors of the county at a general or special election and has received the affirmative vote of a majority of the electors voting on the proposition. The proposition of approval shall call for a 'yes' or 'no' vote and shall read in substance as follows:

" 'Shall the resolution of the board of supervisors adopting a limited civil service system under the county civil service enabling law be approved?' "

falls somewhat short of precision. Its general objective, nevertheless, is fairly apparent. Like other civil service laws, it is to be construed to harmonize and not to conflict with principles embodied in related legislation. (*Hanley* v. *Murphy,* 40 Cal.2d 572, 576 [255 P.2d 1].)

■ The basic principle of civil service, as enunciated in judicial decisions, is that of a service in which appointments and promotions are based upon merit and employees' job security is protected by relatively high assurances of tenure. (*Hanley* v. *Murphy, supra,* 40 Cal.2d at p. 577; *Almassy* v. *Los Angeles County Civil Service Com.,* 34 Cal.2d 387, 404 [210 P.2d 503]; *Allen* v. *McKinley,* 18 Cal.2d 697, 705 [117 P.2d 342]; 15 Am.Jur.2d, Civil Service, § 1; see Kaplan, The Law of Civil Service (1958) pp. 386-387.) ■ Two qualifying principles or elements are the usual concomitants of such a system. One is the subsisting authority of the governmental entity to reorganize, to alter its internal structural arrangements in keeping with new or newly discerned needs and conditions. In the case of California counties this authority is expressed in terms of the constitutional and charter power of boards of supervisors to regulate the number, compensation and terms of employment of most county officers and employees. (Cal. Const., art. XI, §§ 5, 7½.)

The second element is the practically universal presence of a set of excepted offices and positions termed *exempt* or *nonclassified.* With individual variations, civil service laws normally except designated offices and positions such as elective offices, appointive department heads, confidential assistants and temporary technical consultants (see Kaplan, *op. cit.,* pp. 63-86). Some of these exemptions are premised on the desirability of maintaining maximum responsiveness on the part of those holding high-echelon or "sensitive" positions; others on the impracticability of recruitment via civil service. Governmental need for a group of exempt positions at the county level is expressed in the enabling law's provision for a "limited civil service system" and in the charters of chartered counties.[2]

---

[2] Two provisions of the County Civil Service Enabling Law are as follows: "Any county may by ordinance adopt a limited civil service system for any or all county officers and employees, except elective officers." (Gov. Code, § 31104.)

"The ordinance creating the civil service system shall designate the appointive officers and employees to be placed in the system." (Gov. Code, § 31106.)

Maintenance of a *modus vivendi* among these three governmental principles—civil service, structural adaptability and a category of exempt positions—is bound to set up occasional tensions and collisions. Fulfillment of one desideratum may effect a displacement, however minor, in one of the others. █ The power to reorganize, abolish and create offices has a necessary impact on the civil service system, enlarging or restricting its scope or affecting the tenure of an incumbent. Enlargement or diminution of the class of exempt positions has a similar effect. Decisions in California and other states hold that the adoption of a civil service system does not restrict the governing body's power to effect structural reorganizations in the interests of economy and efficiency, even though it entails abolition of a civil service position. (*Hanley* v. *Murphy, supra,* 40 Cal.2d at p. 581; *O'Neill* v. *Williams,* 53 Cal.App. 1, 4 [199 P. 870]; *Foley* v. *City of Oakland,* 33 Cal.App. 128, 129-130 [164 P. 419]; see also cases cited 15 Am.Jur.2d, Civil Service, § 43.) █ The courts have adopted the criterion of good faith to weigh the legality of actions abolishing civil service positions. The action will be upheld if taken in good faith, but invalidated if it is a subterfuge for the piecemeal dissolution of the civil service system. (*Rains* v. *Contra Costa County,* 37 Cal.2d 263, 265 [231 P.2d 55]) or a sham method of ousting an unwanted employee. (*Hanley* v. *Murphy, supra,* 40 Cal.2d at pp. 578, 581; *Rexstrew* v. *City of Huntington Park,* 20 Cal.2d 630, 633 [128 P.2d 23]; *Charamuga* v. *Cox,* 207 Cal.App.2d 853, 856 [24 Cal.Rptr. 811]; Note, 172 A.L.R., pp. 1369-1375.) █ Reorganization of governmental offices promulgated in good faith and for reasons of efficiency or economy does not "nullify the basic principle" of civil service even though it results in abolition of one or several civil service positions.

In this case petitioners did not plead bad faith. There was no pleaded charge that the 1963 ordinances either on their face or by their result were designed to replace incumbent employees by an exempt appointee. (See *Stahm* v. *Klein,* 179 Cal.App.2d 512, 520 [4 Cal.Rptr. 137].) There was no pleaded claim that these ordinances were part of an attempt to destroy the civil service system by piecemeal amendment. The trial court findings do not find bad faith or any attempt to replace particular county employees. █ Petitioners apparently have proceeded on the thesis that *as a matter of law* the 1963 ordinances were within the category of actions

"nullifying the basic principle" of civil service, which thesis was apparently adopted by the trial court, at least in part. As we construe the quoted phrase, they do not.

The present case has strong parallels to *Rains* v. *County of Contra Costa, supra,* 37 Cal.2d 263. There the board of supervisors removed all physicians from the county civil service and placed them in an exempt status. The civil service ordinance required voter approval of any amendment "repealing . . . this ordinance." The court held that in the absence of any showing that the action was part of an attempt to destroy the civil service system by piecemeal amendment, there was no substantial impairment or repeal. Petitioners argue that the civil service ordinance involved in *Rains* was specifically limited to repealing ordinances, while the civil service ordinance of Placer County refers both to amendments and repeals. In *Rains,* however, the election requirement of the ordinance was judicially construed to apply to the broader group of action obviously envisioned by its draftsmen, that is, amendments as well as repeals. (37 Cal.2d at p. 265.)

Petitioners argue that the 1962 county election approving the basic civil service ordinance under the County Civil Service Enabling Law imparted to that ordinance the characteristics of an initiative or referendum, which is beyond power of alteration except by popular vote. By its own terms, the basic ordinance approved by the voters permits the board of supervisors to enact and implement amendments which do not "nullify the basic principle" of civil service, and we have held that the present action entails no such nullification.

The judgment granting a writ of mandate is reversed with directions to deny the petition.

Pierce, P. J., and Sparks, J. pro tem.,* concurred.

A petition for a rehearing was denied May 5, 1965, and respondents' petition for a hearing by the Supreme Court was denied June 2, 1965.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.