[No. C008543. Third Dist. June 25, 1991.]

TOM HUENING, Plaintiff and Respondent, v.
MARCH FONG EU, as Secretary of State, etc., Defendant and
Respondent;
DONALD MALE, as State Printer, etc., Real Party in Interest and
Respondent;
TOM NOBLE et al., Real Parties in Interest and Appellants.

768

## Counsel

No appearance for Plaintiff and Respondent.

Remcho, Johansen & Purcell, Lowell Finley and John Lewis for Real Parties in Interest and Appellants.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, N. Eugene Hill, Assistant Attorney General, Catherine Van Aken and Marsha A. Bedwell, Deputy Attorneys General, for Defendant and Respondent and for Real Party in Interest and Respondent.

## Opinion

PUGLIA, P. J.—Elections Code section 3564.1 (hereafter section 3564.1), deals with arguments concerning measures submitted to the voters. It prohibits the use in a ballot argument of the name of anyone represented to be for or against a ballot measure without that person's consent. In this appeal we decide that section 3564.1 is invalid and of no force or effect because its enactment did not comply with the procedure specified in the Political Reform Act of 1974 (Gov. Code, § 81000 et seq., hereafter the Political Reform Act) for the amendment of that act. (See Gov. Code, § 81012.)

I

Section 3564.1 was added to the Elections Code in 1978 as part of an act adding several sections to that code and one section to the Education Code, all of which apply virtually identical restrictions to different types of elections. (See Stats. 1978, ch. 172, pp. 401-402.) Section 3564.1 provides: "A ballot argument or a rebuttal argument which includes in its text the name or title of a person, other than the author of the argument, who is represented as being for or against a measure, shall not be accepted unless the argument is accompanied by a signed consent of that person. The consent of a person, other than an individual, shall be signed by an officer or other duly authorized representative. 'Person' as used in this section means any individual, partnership, corporation, association, committee, labor organization, and any other organization or group of persons."

Proposition 119 was an initiative measure on the June 5, 1990, primary election ballot. Its official title was "Reapportionment by Commission. Initiative Constitutional Amendment and Statute." On or about February 16, 1990, the Secretary of State made available to the public the ballot pamphlet for this and other ballot measures, including arguments for and against the measures and rebuttal arguments. (See Elec. Code, § 3567.5 et seq.) The rebuttal to the argument in favor of Proposition 119, drafted by real parties in interest Tom Noble, Ed Foglia, and Dr. Regene L. Mitchell (hereafter collectively opponents), included the following passage: "119 means coastal areas will get the fewest possible seats. [¶] (Is this why Chevron contributed $25,000.00 to 119?)"

According to documents filed with the Secretary of State and available for public inspection, Chevron Corporation contributed $25,000 in late 1989 to the committee supporting Proposition 119. However, because opponents had not obtained written consent to use Chevron Corporation's name in their rebuttal argument, the proponent and chairman of the committee supporting Proposition 119, Tom Huening (petitioner), initiated this mandamus proceeding to require the Secretary of State to delete the above passage. The trial court granted the requested relief and the challenged portion of the rebuttal argument was deleted from the ballot pamphlet as distributed.[1] Opponents appeal.

---

[1] Petitioner also sought and the trial court ordered removal of another passage in opponents' rebuttal argument regarding contributions made by "Republican interests." Opponents do not challenge this portion of the judgment on appeal.

## II

Opponents challenge the validity and application of section 3564.1 and assert it violates the First Amendment to the federal Constitution on a number of grounds. They contend it does not apply where the argument refers to a person as a contributor instead of being "for or against" the measure or where the person identified opposes the position of the argument drafter. Opponents further contend section 3564.1 amends the Political Reform Act without having been enacted as required by that act.

On June 5, 1990, Proposition 119 was defeated by the voters. We address first the question of mootness. Despite defeat of Proposition 119, opponents and the Attorney General, on behalf of respondent Secretary of State and real party in interest Donald Male, the State Printer, request we decide the issues raised on the merits because of their importance and the likelihood of recurrence in connection with future ballot measures. ▮ "Under certain conditions, disputes concerning election procedures are properly reviewable by an appellate court even though the particular election in question has already taken place." (*Gebert* v. *Patterson* (1986) 186 Cal.App.3d 868, 872 [231 Cal.Rptr. 150].) Even though the relief requested is no longer available, review may be appropriate if the contentions raised are of general public interest "and are likely to occur in future elections in a manner evasive of timely appellate review." (*Ibid.*; *Unger* v. *Superior Court* (1984) 37 Cal.3d 612, 614 [209 Cal.Rptr. 474, 692 P.2d 238]; *Ferrara* v. *Belanger* (1976) 18 Cal.3d 253, 259 [133 Cal.Rptr. 849, 555 P.2d 1089].)

This is such a case. Opponents' chief contentions relate to the scope and validity of section 3564.1, issues which are likely to recur in future elections. Because of the short period between the publication of ballot pamphlets and the election, it is unlikely such contentions can be reviewed before the election. Therefore, we shall consider opponents' challenge. However, our conclusion section 3564.1 is an amendment to the Political Reform Act whose enactment was not in compliance with the provisions of that act renders it unnecessary to consider opponents' other contentions.

## III

The Political Reform Act was adopted by initiative measure approved by the electorate in 1974. It appears in title 9 of the Government Code and consists of 11 chapters. The Political Reform Act covers a wide variety of topics relating to elections. It creates and empowers the Fair Political Practices Commission (Gov. Code, § 83100 et seq.), and deals with organization of committees concerned with election matters (Gov. Code, § 84100 et seq.), filing of campaign statements and reports and disclosure of

campaign financing (Gov. Code, § 84200 et seq.), limits on campaign contributions (Gov. Code, § 84300 et seq.), registration and reporting of lobbyists (Gov. Code, § 86100 et seq.), conflicts of interest of public officials (Gov. Code, § 87100 et seq.), auditing of lobbyists and candidates (Gov. Code, § 90000 et seq.), enforcement (Gov. Code, § 91000 et seq.), and other more general matters. Chapter 8 of title 9 (Gov. Code, § 88000 et seq.) covers the content, inspection, and printing of ballot pamphlets.

The general purposes sought to be accomplished by the Political Reform Act are found in Government Code section 81002: "The people enact this title to accomplish the following purposes:

"(a) Receipts and expenditures in election campaigns should be fully and truthfully disclosed in order that the voters may be fully informed and improper practices may be inhibited.

"(b) The activities of lobbyists should be regulated and their finances disclosed in order that improper influences will not be directed at public officials.

"(c) Assets and income of public officials which may be materially affected by their official actions should be disclosed and in appropriate circumstances the officials should be disqualified from acting in order that conflicts of interest may be avoided.

"(d) *The state ballot pamphlet should be converted into a useful document so that voters will not be entirely dependent on paid advertising for information regarding state measures.*

"(e) Laws and practices unfairly favoring incumbents should be abolished in order that elections may be conducted more fairly.

"(f) Adequate enforcement mechanisms should be provided to public officials and private citizens in order that this title will be vigorously enforced." (Italics added.)

The Legislature's power to amend the Political Reform Act is restricted by its terms. Government Code section 81012 provides: "This title may be amended or repealed by the procedures set forth in this section. If any portion of subdivision (a) is declared invalid, then subdivision (b) shall be the exclusive means of amending or repealing this title.

"(a) This title may be amended to further its purposes by statute, passed in each house by rollcall vote entered in the journal, two-thirds of the

membership concurring and signed by the Governor, if at least 12 days prior to passage in each house the bill in its final form has been delivered to the commission for distribution to the news media and to every person who has requested the commission to send copies of such bills to him or her.

"(b) This title may be amended or repealed by a statute that becomes effective only when approved by the electors."

Opponents contend section 3564.1 purports to amend the Political Reform Act by restricting what may be included in a ballot argument, yet this section was not enacted in the manner set forth in Government Code section 81012. The Attorney General responds that section 3564.1 is not an amendment because the Political Reform Act does not regulate the content of ballot arguments and Government Code section 81012 was never intended to apply so broadly. It is undisputed that section 3564.1 was enacted by the Legislature but not with the concurrence of at least two-thirds of the membership of each house.

Resolution of the issue before us turns on the meaning of the word "amended" as used in the Government Code section 81012. Because that term is not defined in the Political Reform Act, it is given its normal meaning. (See *Card* v. *Community Redevelopment Agency* (1976) 61 Cal.App.3d 570, 573, fn. 1 [131 Cal.Rptr. 153].) With one limited exception, the terms "amend" and "amendment" have received little judicial attention. The lone exception relates to former article IV, section 24 of the California Constitution, which read in relevant part: "[N]o law shall be revised or amended by reference to its title; but in such case the Act revised or section amended shall be reenacted and published at length as revised or amended."[2] A long line of cases beginning with *Earle* v. *S. F. Board of Education* (1880) 55 Cal. 489 narrowly interpreted former article IV, section 24 not to include legislation which merely adds new sections to existing statutes without affecting existing sections, even where the additions impliedly amended the existing sections. (See, e.g., *Hellman* v. *Shoulters* (1896) 114 Cal. 136, 152-153 [45 P. 1057]; *Harris* v. *Fitting* (1937) 9 Cal.2d 117, 120 [69 P.2d 833]; *Southern Pac. Co.* v. *Railroad Com.* (1939) 13 Cal.2d 89, 124-125 [87 P.2d 1055]; *People* v. *Peete* (1921) 54 Cal.App. 333, 368-369 [202 P. 51]; *Johnson* v. *City of Glendale* (1936) 12 Cal.App.2d 389, 392-393 [55 P.2d 580]; *Assets Reconstruction Corp.* v. *Munson* (1947) 81 Cal.App.2d 363, 368 [184 P.2d 11].)

In *Hellman* v. *Shoulters, supra,* 114 Cal. 136, the court explained the justification for this narrow reading by reference to the purpose behind the

---

[2] As used in this provision, the terms "revised" and "amended" were considered interchangeable. (See *People* v. *Western Fruit Growers* (1943) 22 Cal.2d 494, 501 [140 P.2d 13]; *Pierce* v. *County of Solano* (1923) 62 Cal.App. 465, 469 [217 P. 545].)

constitutional provision. According to the court, that purpose was to avoid " 'the enactment of statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effect, and the public, from the difficulty of making the necessary examination and comparison, failed to become appraised [sic] of the changes made in the laws.' " (Hellman v. Shoulters, supra, 114 Cal. at pp. 152 [quoting from People v. Mahaney (1865) 13 Mich. 481].) The court continued: " 'An amendatory act which purported only to insert certain words or to substitute one phrase for another in an act or section which was only referred to but not republished, was well calculated to mislead the careless as to its effect, and was perhaps sometimes drawn in that form for that express purpose. Endless confusion was thus introduced into the law, and the constitution wisely prohibited such legislation. But an act complete in itself is not within the mischief designed to be remedied by this provision, and cannot be held to be prohibited by it without violating its plain intent.' " (114 Cal. at pp. 152-153.)

The *Hellman* court recognized an act adding new provisions to and affecting the application of an existing statute "in a sense" amends that statute. (114 Cal. at p. 152.) However, according to the court, such *amendment by implication* was not within the scope of the constitutional prohibition.[3]

Moving beyond this limited application, the few appellate decisions considering the general import of the term "amendment" have taken a much broader view. In *Robbins* v. *O. R. R. Company* (1867) 32 Cal. 472 the court was required to interpret the terms "rail" and "track" as used in an 1866 act setting rates for railroad passenger service in the City of San Francisco, and requiring the owner of the railroad tracks to "keep the space between the rails in thorough repair." The act expressly excluded from this repair requirement "any portion of the street outside of the track." (Stats. 1866, ch. 622, § 1, 2, pp. 849-850.) A dispute arose as to whether the owner was required to repair that portion of the street between two adjacent tracks or just the portion between the rails of each track.

By first finding the 1866 act to be an amendment to an 1861 act granting the right to construct the tracks, the court adopted the meanings for "rail" and "track" established in the earlier act. The 1861 act required the owners to "pave, or plank, . . . the streets through which the said railroad shall run, along the whole length thereof, for a width extending two feet on each side of said road, and [to] keep the same constantly in repair." (Stats. 1861, ch.

---

[3]In 1966 California Constitution article IV, section 24 was repealed and replaced by California Constitution article IV, section 9, which expressly limits the reenactment requirement to amendments of specific sections of a statute. The successor provision reads in relevant part: "A statute may not be amended by reference to its title. A section of a statute may not be amended unless the section is re-enacted as amended."

198, § 2, pp. 190-191.) It further provided, "[t]he track of said railroad shall not be more than five feet wide within the rails, with a space between the double tracks sufficient for the passage of the cars." (Stats. 1861, ch. 198, § 3, p. 191.)

The *Robbins* court held the 1866 act amended the 1861 act despite a failure of the later act to express such an intent or expressly to change any provisions of the former act. (*Robbins* v. *O. R. R. Company, supra,* 32 Cal. at p. 474.) It was enough that the 1866 act in effect clarified the application of the 1861 act.

In *Rains* v. *County of Contra Costa* (1951) 37 Cal.2d 263 [231 P.2d 55], the court was asked to decide whether an ordinance amended or repealed an earlier one. The earlier ordinance established a merit system for county employees but exempted elected officials, casual employees, and certain others. It contained a provision permitting amendment by four-fifths vote of the board of supervisors but requiring approval of the voters for repeal.

The later ordinance added to the list of exempted employees the medical director of the county hospital and all physicians and surgeons serving the county. It was contended this was so significant a change as effectively to repeal the earlier ordinance. The court relied on the common definitions of "repeal" and "amend," noting that "repeal ordinarily means revocation, rescission, abrogation or destruction, whereas amendment involves an alteration or change, as by addition, taking away or modification" (37 Cal.2d at p. 265; citing Webster's New Internat. Dict.; 3 Words and Phrases, 319-321; 37 Words and Phrases, 5-6). The court concluded the later ordinance was an amendment. It merely added further exceptions to the civil service classification without changing any provisions of the existing ordinance.

In *Franchise Tax Bd.* v. *Cory* (1978) 80 Cal.App.3d 772 [145 Cal.Rptr. 819], we considered a challenge similar to that presented here. Control language in an annual appropriations bill restricted the use of funds for auditing financial reports of political candidates. (*Id.* at p. 774.) The Franchise Tax Board claimed the language was an amendment to the Political Reform Act which had not been enacted in compliance with Government Code section 81012.

We stated: "The Legislature correctly asserts that the audit provisions of the [Political Reform] Act do not by their terms conflict with the control language of item 106. The [Political Reform] Act does not prescribe the standards under which audits are to be conducted, nor does it prohibit the use of the sampling techniques of the control language. Nevertheless, conflict with existing law is neither an essential, nor even a normal attribute of an

amendment. An amendment is '. . . any change of the scope or effect of an existing statute, whether by addition, omission, or substitution of provisions, which does not wholly terminate its existence, whether by an act purporting to amend, repeal, revise, or supplement, or by an act independent and original in form, . . .' (Sutherland, Statutory Construction (4th ed. 1972) § 22.01, p. 105.) A statute which adds to or takes away from an existing statute is considered an amendment. (*Robbins* v. *O. R. R. Company, supra*, 32 Cal. 472.)

"In *Assets Reconstruction Corp.* v. *Munson* (1947) 81 Cal.App.2d 363, 368 [184 P.2d 11], the court described an amendment as '"a legislative act designed to change some prior or existing law by adding or taking from it some particular provision."' And in *Balian Ice Cream Co.* v. *Arden Farms Co.* (S.D.Cal. 1950) 94 F.Supp. 796, 798-799, the analysis necessary to determine whether a particular act is or is not an amendment to an existing statute is described as follows: 'Whether an act is amendatory of existing law is determined not by title alone, or by declarations in the new act that *it purports to amend* existing law. On the contrary, it is determined by an examination and comparison of its provisions with existing law. If its aim is to clarify or correct uncertainties which arose from the enforcement of the existing law, or to reach situations which were not covered by the original statute, the act is amendatory, *even though in its wording* it does not purport to amend the language of the prior act.' (Italics in original.)

"The control language unquestionably adds to the [Political Reform] Act, both by clarifying the standards to be used and by significantly restricting the manner in which audits are to be conducted. As such it undertakes to amend the Act, and along with resolution No. 55, is invalid." (*Franchise Tax Bd.* v. *Cory, supra*, 80 Cal.App.3d at pp. 776-777, fns. omitted.)

*Planned Parenthood Affiliates* v. *Swoap* (1985) 173 Cal.App.3d 1187 [219 Cal.Rptr. 664] involved another budget act purporting to affect existing statutes. The court of appeal found section 33.35 of the Budget Act of 1985-1986, restricting the use of family planning funds for organizations providing abortion-related services, to be a violation of the single subject rule (Cal. Const., art. IV, § 9) because it not only affected budget matters but also amended the family planning act. According to the court, a major purpose of the family planning act is to provide medical knowledge of family planning matters, such as birth control information and techniques, including abortions. (173 Cal.App.3d at p. 1200.) Thus, any budget restraint on the use of abortion techniques necessarily amends that act. As explained by the court: "Even if we were to agree with respondents that section 33.35 'simply clarifies' funding arrangements for abortion and other services authorized under the family planning act we would nonetheless be

compelled to conclude that it impermissibly amends that act within the meaning of the single subject rule . . . ." (*Planned Parenthood Affiliates* v. *Swoap, supra,* 173 Cal.App.3d at pp. 1200-1201.)

Relying in part on our definition of "amendment" in *Franchise Tax Bd.* v. *Cory,* the court in *Planned Parenthood Affiliates* explained section 33.35 of the Budget Act of 1985-1986 "does not simply clarify the family planning act; quite the contrary, its prohibition on the granting of family planning funds 'to any group, clinic, or organization which performs, promotes, or advertises abortions' is a manifest restriction of activities authorized under the family planning act. At the very least, section 33.35 imposes substantive conditions that nowhere appear in existing law. [¶] Because section 33.35 of the Budget Act of 1985-1986 grants authority to a state agency that the agency does not otherwise possess, and in this manner amends the family planning act, said section violates the single subject rule of article IV, section 9, of the California Constitution and is invalid." (173 Cal.App.3d at pp. 1200-1201, fn. omitted.)

In *Fallbrook Sanitary Dist.* v. *San Diego Local Agency Formation Com.* (1989) 208 Cal.App.3d 753 [256 Cal.Rptr. 590], the Court of Appeal rejected the sanitary district's claim the defendant commission exceeded its powers in adding a provision to a city incorporation proposal changing the sanitary district from an independent entity to a subsidiary of the proposed city. Under the Cortese-Knox Act (Gov. Code, § 56000 et seq.) a county Local Agency Formation Commission (LAFCO) has the power "[t]o review and approve or disapprove *with or without amendment,* wholly, partially, or conditionally, proposals for changes of organization or reorganization . . ." within the county. (Gov. Code, § 56375, subd. (a), italics added.) The sanitary district argued the amendment power in this section permitted the LAFCO to delete or modify portions of an incorporation proposal only, while additions could only be made a condition of the LAFCO's approval, thereby permitting the initiator to withdraw the proposal if unhappy with the additions.

The court disagreed, reading the term "amendment" in Government Code section 56375 in its normal sense. According to the court: "The Random House Dictionary of the English Language (2d ed. 1987) at page 66 defines amendment as '1. the act of amending or the state of being amended. 2. an alteration of or *addition* to a motion, bill, constitution, etc. 3. a change made by correction, *addition,* or deletion.' [Italics original.] Similarly Black's Law Dictionary (5th ed. 1979) at page 74 defines amendment as 'To change or modify for the better. To alter by modification, deletion, or *addition.*' [Italics original.] Modification in turn is defined as 'A change; an alteration or amendment which introduces new elements into the details, or cancels some

of them, *but leaves the general purpose and effect of the subject-matter intact.*' (Black's Law Dict., *supra*, at p. 905 [italics original]; see also *Andersen* v. *Civil Service Com.* (1981) 122 Cal.App.3d 577, 579 [176 Cal.Rptr. 66]: '"[m]odify" means "to alter; to change an incidental or subordinate feature; enlarge, extend; limit, reduce." '

"[The sanitary district's] interpretation of [Gov. Code] section 56375, subdivision (a), which would allow material deletions but not material additions, is not consistent with these definitions. Contrary to [the sanitary district's] argument the plain meaning of the words chosen by the Legislature—'with or without amendment'—encompass[es] both additions and deletions so long as the general nature of the subject matter is not changed." (208 Cal.App.3d at pp. 759-760.)

As the foregoing cases demonstrate, the normal and customary meaning of the term "amendment" includes not only modifications or deletions but also additions. Thus, amendments to a code section could take the form of adding subdivisions to, deleting subdivisions from, or modifying subdivisions of that section. Similarly, amending a statute includes adding sections to, deleting sections from, or modifying sections of that statute. And in the case of an added code section, it is the effect of the added section and not its label or the representations in the enactment creating it which controls. Where a new section affects the application of the original statute or impliedly modifies its provisions, the new section is an amendment to the statute.

IV

Chapter 8 of the Political Reform Act (Gov. Code, § 88000 et seq.) governs the content of a ballot pamphlet. Government Code section 88001 requires that the pamphlet contain, inter alia, "[a] complete copy of each state measure" (subd. (a)), "[a] copy of the arguments and rebuttals for and against each state measure" (subd. (c)), and "[a] copy of the analysis of each state measure" (subd. (d)). Government Code section 88003 describes the required contents of the legislative analysis, Government Code sections 88002 and 88004 set forth the order of information to be included in the pamphlet, and Government Code section 88005 sets forth the printing specifications.

Government Code section 88006 requires the Secretary of State to make the ballot pamphlet available for public inspection and permits any voter to apply for a writ of mandate to require that portions be amended or deleted. Such a writ shall issue only upon proof the pamphlet is "false, misleading or inconsistent with the requirements of [chapter 8] *or the Elections Code.*"

(Italics added.) Chapter 8 is substantially replicated in Elections Code sections 3570 through 3577. (See Elec. Code, § 3567.5.) The Elections Code also contains provisions regulating the size and submission of ballot arguments. (Elec. Code, § 3559 et seq.) Section 3564.1 is included within these provisions.

Neither chapter 8 nor any other portion of the Political Reform Act contains limitations on the content of ballot arguments. Yet because the ballot pamphlet must be consistent with the Elections Code, section 3564.1 introduces such a restriction.

▌ Government Code section 81012 restricts the mode of amendment of title 9 of the Government Code, which encompasses the Political Reform Act. Because chapter 8 of title 9 governs the content of ballot pamphlets, this restriction would include amendments affecting the content of such pamphlets. Government Code section 88007 provides a limited exception for amendments which require additional information in the pamphlet. It reads: "Notwithstanding the provisions of Section 81012, the Legislature may without restriction amend this chapter to add to the ballot pamphlet information regarding candidates or any other information."

▌ It is a familiar maxim of construction that where a statute provides a specific exception to a general rule, other exceptions are necessarily excluded. (*Mutual Life Ins. Co.* v. *City of Los Angeles* (1990) 50 Cal.3d 402, 410 [267 Cal.Rptr. 589, 787 P.2d 996]; *Jackson* v. *Stockdale* (1989) 215 Cal.App.3d 1503, 1512 [264 Cal.Rptr. 525].) ▌ Government Code section 88007 excludes from the coverage of Government Code section 81012 only those amendments which add information to the ballot pamphlet. Had the voters intended a similar exception for amendments excluding or limiting information they could have so provided. That they did not demonstrates a contrary intent.

The Attorney General contends the ballot pamphlet disseminated to the voters who enacted the Political Reform Act "gave no clue" the amendment provision would extend to portions of the Elections Code touching on the content of materials in the ballot pamphlet; that such an interpretation is an unwarranted restriction on legislative power without a clear declaration of such intent.

In discerning the intent of the voters in enacting the Political Reform Act, and in particular Government Code section 81012, we begin with the language used, giving the words their ordinary meaning. (*Lungren* v.

*Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) Where the meaning is clear there is ordinarily no reason to look further. (*Ibid.*)

As previously indicated, the normal and customary meaning of the term "amended" as used in Government Code section 81012 encompasses new code sections affecting in some way the application of a statute or impliedly modifying provisions of the statute. While this court might question the wisdom of such a restriction on the Legislature's power to amend the Political Reform Act, that question is not before us. ■ Courts " ' "must follow the language used and give to it its plain meaning, whatever may be thought of the wisdom, expediency, or policy of the act, even if it appears probable that a different object was in the mind of the [voters]." ' [Citations.]" (*People* v. *Weidert* (1985) 39 Cal.3d 836, 843 [218 Cal.Rptr. 57, 705 P.2d 380].) It is not our province to rewrite statutory enactments to reach what might be considered a more rational result.

■ Although section 3564.1 is not contained within the provisions of the Political Reform Act itself, it is effectively an addition to it. Its effect on ballot arguments and hence the content of ballot pamphlets is the same as if it had been so included. Like the audit restrictions contained in an appropriations bill with which we dealt in *Franchise Tax Bd.* v. *Cory, supra,* 80 Cal.App.3d 772, it is an amendment to the Political Reform Act. And because section 3564.1 was not enacted by a vote of two-thirds of each house or by the voters, as required by Government Code section 81012, section 3564.1 must be stricken.[4]

V

Having concluded section 3564.1 was not properly enacted, we need not consider opponents' other arguments attacking that section. We find this particularly appropriate as to opponents' first amendment contention, since no opposing argument has been presented to the court. The original petitioner, Huening, chose not to respond to this appeal at all and, despite the significant nature of this issue, the Attorney General concedes the statute is unconstitutional. (But see *Clark* v. *Burleigh* (1991) 228 Cal.App.3d 1369 [279

---

[4]Opponents also contend this amendment does not further the purposes of the Political Reform Act, as also required by Government Code section 81012, because it detracts from the purpose of full disclosure of relevant information. We need not consider this contention in light of our conclusion on the mode of enactment.

Cal.Rptr. 333]; *Drexel* v. *Mann* (1991) 228 Cal.App.3d 630 [278 Cal.Rptr. 887].)[5]

VI

Section 3564.1 amends the Political Reform Act, but it was not enacted with the concurrence of at least two-thirds of the membership of each house of the Legislature or by the voters as required by Government Code section 81012. It is therefore invalid and of no force or effect. The judgment enforcing the provisions of section 3564.1 is reversed and the trial court is directed to enter judgment for opponents. Opponents are to receive their costs on appeal.

Sims, J., concurred.

**RAYE, J.,** Concurring and Dissenting.—I concur with the result reached by the majority. However, I am not persuaded by the majority's rationale, viz.: that Elections Code section 3654.1 is an invalid amendment to the Political Reform Act of 1974 (Political Reform Act) because it was not enacted in compliance with Government Code section 81012.

The majority correctly observes that "[t]he Political Reform Act covers a wide variety of topics relating to elections." Clearly, not every effort to legislate on these "wide variety of topics" would constitute an "amendment" to the act within the meaning of section Government Code 81012.1 or the underlying provision of the California Constitution, article II, section 10.[1]

Prior to passage of the Political Reform Act, the Legislature had enacted a body of statutes governing ballot arguments. (See generally Elec. Code, § 3559 et seq.) While the Political Reform Act added provisions to the Government Code relating to the statewide ballot pamphlet, the provisions could fairly be characterized as innocuous. Requirements were

---

[5]We also deny opponents' request that we take judicial notice of the transcript from the companion case of Lowenstein v. Eu and selected legislative committee reports. These materials are not relevant to the single issue, the merits of which we address in this opinion.

[1]The Legislature's authority to amend initiative measures is limited by article II, section 10, of the California Constitution which provides in pertinent part: "(c) The Legislature may amend or repeal referendum statutes. It may amend or repeal an initiative statute by another statute that becomes effective only when approved by the electors unless the initiative statute permits amendment or repeal without their approval." The present dispute concerns language in the Political Reform Act which permits legislative amendment of the act by two-thirds vote. Absent such language, any legislative measure deemed to "amend" the Political Reform Act would not be effective until approved by the voters.

added regarding the placement of arguments and the printing of the pamphlet. (Gov. Code, §§ 88000-88007.) No effort was undertaken to prescribe a process by which ballot arguments were to be placed in the ballot pamphlet. Existing Elections Code provisions were largely unaffected, and section 88006 of the act required the ballot pamphlet to comport with the Elections Code. (Gov. Code, § 88006.) Given this history of legislative action, and the relatively mundane quality of changes affecting ballot arguments contained in the Political Reform Act, it is unreasonable to impose the extraordinary vote requirements of Government Code section 81012.1 on all legislative action affecting ballot arguments.[2]

Restrictions on the authority of the Legislature to amend initiative measures are necessary and proper. They protect the people's initiative powers by precluding the Legislature from undoing what the people have done, without the electorate's consent. However, the Constitution does not restrict the Legislature and the Governor from enacting legislation which is neither in conflict with the language of an initiative measure nor destructive of the initiative's purpose.

The majority opinion implies that even legislation advancing the goals of political reform would require a two-thirds majority, as would efforts by the Legislature to clarify ambiguities in the measure. Granted, the term "amendment" has been so defined in other contexts; however, the application of such a strict definition to the interpretation of section 81012 or the Constitution is neither compelled nor warranted.

While the Legislature's enactment of Elections Code section 3564.1 by majority vote did not in my view offend section 81012 or California Constitution article II, the provision is nonetheless invalid. Both the appellant and respondent assert that section 3564.1 violates the First Amendment to the federal Constitution. I concur.

The ballot pamphlet is a "limited public forum." (*Kaplan v. County of Los Angeles* (9th Cir. 1990) 894 F.2d 1076; *Gebert v. Patterson* (1986) 186 Cal.App.3d 868 [231 Cal.Rptr. 150].) "[O]nce the government creates the forum, 'it is bound by the same standards as apply in a traditional public form. Reasonable time, place and manner regulations are permissible, and a content-based prohibition must be narrowly drawn to effectuate a compelling state interest.' [Citations.]" (*Kaplan v. County of Los Angeles, supra,* 894

---

[2]It is also significant that article II, section 10 of the California Constitution provides that: "(e) The Legislature shall provide the manner in which petitions shall be circulated, presented and certified, and measures submitted to the electors." Restrictions on legislative authority in this area should be strictly construed.

F.2d at p. 1080.) Elections Code section 3564.1 imposes a content-based restriction on speech. It subjects the publication of truthful and pertinent information about a measure's supporters and opponents to the unrestrained veto authority of those most likely to oppose the dissemination of such information.

The Secretary of State cannot discern a compelling state interest to support such a restriction. I am also confounded. Accordingly, I would conclude that Elections Code section 3564.1 is unconstitutional.