Filed 3/22/24  Hamida v. Page CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RIDA HAMIDA,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>BOB PAGE, et al.,<br><br>    Defendants and Respondents. | G061935<br><br>Super. Ct. No. 30-2022-01276435<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Nathan R. Scott, Judge.  Dismissed.  Respondent's Request for Judicial Notice.  Denied.

Law Offices of Chad Morgan and Chad D. Morgan, and Law Office of Mark Rosen and Mark S. Rosen, for Plaintiff and Appellant.

Leon J. Page, County Counsel, Rebecca S. Leeds and Suzanne E. Shoai, Deputy County Counsel, for Defendants and Respondents.

California Association of Clerks and Elections Officials and California State Association of Counties, as Amicus Curiae on behalf of Defendant and Respondent Robert Page.

\*        \*        \*

Rida Hamida, a prospective candidate for Anaheim City Council in 2022, filed nomination papers around noon on the filing deadline. After respondent Orange County Registrar of Voters Bob Page (Registrar) rejected a certain number of signatures on the nomination papers, respondent Anaheim City Clerk Theresa Bass (Clerk) determined Hamida was not qualified as a candidate because she did not submit 20 valid signatures (Registrar and Clerk, collectively Respondents). Hamida did not submit additional signatures before the deadline, but later submitted affidavits from some of the previous signers declaring they made those rejected signatures. Respondents declined to consider the affidavits or change their decisions. Subsequently, Hamida filed a petition for a writ of mandate requesting the court order her name be placed on the November 8, 2022 ballot. After the trial court denied the petition, Hamida appealed.

Because the election has been held, no relief can be granted on Hamida's petition. Hamida, however, argues her appeal is not moot because it presents "'an issue of substantial and continuing public interest and is capable of repetition yet evades review.'" We conclude there is no issue of substantial and continuing public interest because Hamida has not shown a trial court may bypass Respondents' reasonable decisions in reliance on extrinsic evidence never timely submitted to the Registrar. Accordingly, we dismiss the appeal as moot.[1]

---

[1]        In light of our dismissal of the case, we deny the Registrar's Request for Judicial Notice of various judicial and legislative materials, as they relate to the substantive arguments.

## FACTS

On August 18, 2022, Hamida filed a verified petition for writ of mandate pursuant to Elections Code section 13314,[2] requesting the court order her name be placed on the November 8, 2022 ballot as a candidate for Anaheim City Council, District 2, because Respondents allegedly "unlawfully excluded her from the ballot by improperly rejecting four of her nominating signatures." The petition alleged that on August 12, 2022, Hamida submitted nomination papers with 28 signatures. The Registrar rejected 11 signatures: seven were rejected because the voters who signed the nomination papers were not registered to vote in Anaheim's second district, and four were rejected because the signature on the nomination papers did not match the signature on the voter's voter registration. Candidates for city council are required to submit at least 20 nominating signatures. The Clerk rejected Hamida's candidacy and called Hamida to inform her about the decision at approximately 4:45 p.m., on August 12, 2022, which was 15 minutes before the deadline to file nomination papers. Hamida could not submit additional signatures during that time period.

Subsequently, "in an attempt to exhaust any administrative remedy," Hamida submitted sworn affidavits from three of the four voters whose signatures were rejected because they did not match the signatures on the voter registration. The three voters swore they did in fact sign the nomination papers. Respondents refused to consider the affidavits and declined to change their prior decisions. Hamida argued that Respondents' decision breached their duties under the Elections Code and violated her constitutional right to run for public office.

On August 24, 2022, Hamida filed an Ex Parte Application for an expedited hearing and briefing schedule and bifurcation of legal and factual issues. In the application, Hamida addressed the scope of the court's review. Relying on *Ley v.*

---

[2]    All further statutory references are to the Elections Code.

*Dominguez* (1931) 212 Cal. 587 (*Ley*), Hamida argued the court must consider any evidence that the person who signed the nomination papers is in fact the person registered to vote at the address provided. In Respondents' response and partial objection to the ex parte application, they argued the scope of the court's review is limited to comparing the nomination petition signature to the voter affidavit signature without resort to extrinsic evidence based on *Wheelright v. County of Marin* (1970) 2 Cal.3d 448 (*Wheelright*).

In Respondents' Return/Opposition to the petition for writ of mandate, Respondents argued Hamida could not show she was entitled to relief because the Registrar properly performed his ministerial duty of comparing the nomination paper signatures to the voter registration signatures. Respondents further argued the Registrar could not consider extrinsic evidence about the validity of the signatures and that even if he could have, Hamida untimely submitted the voter affidavits after the filing deadline. Respondents noted the filing deadline is statutory and contains no exception for late filing.

In a supporting declaration, the Registrar provided a detailed explanation of the signature verification process. He stated the process comports with regulations promulgated by the Secretary of State. "[C]omparison of [signatures] begins with the presumption that the signature on the petition is the voter's signature. <u>It is our policy and practice to err in favor of validating the voter signature during the signature verification process</u>. We do not look for an exact match. We also compare the signature on the [n]omination [p]aper to all of the signatures we have on file in the voter's registration record to determine validity."

The Registrar explained that in determining whether the signatures are a match, the policy and practice is to consider characteristics such as slant of the signature, whether it is printed or incursive, initial strokes and connective strokes, and misspelled names. He further stated: "Upon initial review, if the operator determines that there are 'multiple, significant, and obvious' distinctions between the signatures upon comparison,

4

the nomination papers will only be rejected if two different staff members unanimously find beyond a reasonable doubt that the signature differs in multiple, significant and obvious respects from all signatures in the voter's registration record.  This is our policy and practice . . . which we followed in this case.  Indeed, after the initial review has been completed and if signatures are still deficient, it is our practice for the Voter Database Lead, the Candidate and Voter Services Manager, and the Deputy Director of Operations all to examine the signatures for a final determination."

Finally, the Registrar stated: "In nearly every election I have overseen, I have observed a situation where a prospective candidate had one or more invalid signatures and needed to obtain more prior to the filing deadline to meet the minimum requirement.  In some instances, when the invalid signatures are noted after 5 p.m., the filing must be rejected for insufficient signatures.  It is for this reason that we encourage prospective candidates to obtain the required number of signatures as soon as possible to file their nomination papers so that they can be examined for sufficiency well before the filing deadline.  Indeed, filing nomination signatures on the day of the filing deadline shortens the potential window for candidates to collect additional signatures, but it is possible and does occur quite frequently.  In the present case, the candidate filing period began on July 18, 2022, so Petitioner had *four weeks* to gather twenty valid signatures."

In reply, Hamida contended that *Wheelright*, *supra*, 2 Cal.3d 448, is factually inapplicable and *Ley*, *supra*, 212 Cal. 587, applies.  She argues that under *Ley*, "it is the court's duty and responsibility to consider extrinsic evidence and remedy whatever systematic errors have occurred in the process."  (Underscoring omitted.)

Hamida's counsel Chad Morgan also submitted a declaration in which he opined that the signatures on the nomination papers are substantially similar to those in the voter registrations.  Morgan conceded he is not an expert in signature evaluation, but contended based on information and belief that "the Registrar of Voters employees who make the comparisons in question are not trained as experts" either.  He argued "lay

5

opinion is sufficient to review the signatures and explain the differences."

At the hearing on Hamida's petition for a writ of mandate, the court conducted an in camera review of the signatures before denying the petition. It concluded: "[P]rocedurally I find nothing arbitrary or capricious about the Registrar's review process here. Substantively having done my own comparison between the nomination paper signatures and the voter registration and exemplars, I cannot find that the Registrar's decision or decisions were an abuse of discretion. [¶] I will add this, as I think I am supposed to defer to the Registrar in a close case. I don't think it is a close case. I don't think those signatures are remotely similar at all. And I do think that the scope of review is limited, and so I am declining to consider extrinsic evidence that might show that those signatures, while markedly different from the voter exemplars, might nonetheless be authentic."

Hamida timely appealed.

## DISCUSSION

Hamida's appeal is moot because the November 8, 2022 election has taken place and the results certified. Thus, no relief can be granted on her petition requesting the court order Respondents to place her name on the November 8, 2022 ballot. (See, e.g., *Mapstead v. Anchundo* (1998) 63 Cal.App.4th 246, 276 [appeal challenging sufficiency of signatures on referendum petition dismissed after election held].)

Hamida, however, argues this court should consider her appeal under the public interest exception to mootness. The public interest exception may apply where the issues presented "are of general public interest and likely to recur" (*Clark v. Burleigh* (1992) 4 Cal.4th 474, 481), and the exception is often applied in election cases. (*Kunde v. Seiler* (2011) 197 Cal.App.4th 518, 527.) "'Under certain conditions, disputes concerning election procedures are properly reviewable by an appellate court even though the particular election in question has already taken place.' [Citation.] Even though the relief requested is no longer available, review may be appropriate if the

6

contentions raised are of general public interest 'and are likely to occur in future elections in a manner evasive of timely appellate review.' [Citations.]" (*Huening v. Eu* (1991) 231 Cal.App.3d 766, 770.)

The issue on appeal does not present an issue of substantial and continuing public interest. Hamida seeks a ruling that under section 13314,[3] a court can find she submitted at least 20 valid nominating signatures by considering extrinsic evidence, such as the affidavits of the signers, even if such evidence was never timely submitted to the Registrar. Her sole authority for this novel intrusion of the judiciary into the election process is a sentence in *Ley*, *supra*, 212 Cal. 587, a 1931 case involving whether the city clerk improperly rejected signatures on certain referendum petitions. (*Id*. at p. 590.) In discussing a category of signatures that were disqualified, the high court stated: "We are of the opinion that in reference to the examination of the affidavits of the circulators, the city clerk is restricted in his examination to a comparison of the signatures contained on the affidavit and on the registration records. The city clerk, except in the one instance provided for in section 273 of the [city] charter, is not clothed with authority to receive or consider extraneous evidence in determining the qualifications of signers or circulators. His duty is simply to determine whether the circulators are qualified electors, and, in determining this question, he is limited by the express provisions of section 338 of the [city] charter to an examination of the registration records. *If fraud has been committed, a court of equity and not the city clerk is the proper forum to determine the matter in the appropriate proceedings.*" (*Id.* at p. 602, italics added.)

Hamida interprets the above italicized sentence as authorizing the trial court to review extrinsic evidence to find that 20 voters registered in the district signed her

---

[3] Section 13314, subdivision (a)(1) states: "An elector may seek a writ of mandate alleging that an error or omission has occurred, or is about to occur, in the placing of a name on, or in the printing of, a ballot, county voter information guide, state voter information guide, or other official matter, or that any neglect of duty has occurred, or is about to occur."

nomination papers. We disagree. The issue before the *Ley* court was whether the city clerk could consider evidence other than the voter registration records to determine the qualifications of the signers or circulators to sign the referendum petitions. The high court concluded the city clerk could not rely on extrinsic evidence to make the qualification determination. (*Ley*, *supra*, 212 Cal. at p. 602.) To address concerns that the city clerk could mistakenly certify signatures of persons who are misrepresenting that they are qualified electors, the high court stated a court of equity could determine whether fraud occurred in a separate proceeding. (*Ibid*.) That statement is dicta because whether fraud was present, intentional or otherwise, was not an issue in the case.

Moreover, Hamida has not persuaded us that a new mechanism, which would allow the trial court to bypass Respondents' reasonable decisions and determine she was validly nominated, is needed. The extant election procedures already provide a mechanism for redress in cases where signatures are invalidated. A prospective candidate need only obtain additional valid signatures and submit them within the four-week time period before the filing deadline. The Registrar has declared "it is possible and does occur quite frequently." Obtaining additional signatures from registered voters does not impose an undue burden and is likely less burdensome than obtaining signed affidavits from the voters. Additionally, the prospective candidate can seek judicial review of the Registrar's decision to reject a signature, which occurred in this case when the trial court conducted its own comparison of the signatures. Given our rejection of Hamida's argument, there is no issue of substantial and continuing public interest. Accordingly, the public interest exception does not apply, and the appeal must be dismissed as moot.[4]

---

[4] Hamida also contends she should have been permitted to cross-examine the Registrar, present expert testimony, and provide guidance to the trial court on evaluating signatures. In light of the mootness of the matter, we decline to entertain these claims.

8

## DISPOSITION

The appeal is dismissed.  Respondents shall recover their costs on appeal.

DELANEY, J.

WE CONCUR:

MOORE, ACTING P. J.

GOODING, J.